JUDITH MOUNTS WILSON *et al.*, Plaintiffs-Appellants, *v.* DON LaCOST, INC., *et al.*, Defendants-Appellees.

(No. 12091; ▮▮▮▮▮▮▮▮▮)

Fourth District—July 10, 1974.

Summers, Watson and Kimpel, of Champaign, for appellants.

Costigan, Wollrab, Fraker & Wochner, of Bloomington, for appellees.

Mr. PRESIDING JUSTICE SMITH delivered the opinion of the court:

In this personal injury action the jury returned a verdict for defendants. Judgment was entered thereon and plaintiffs appeal. They contend that the verdict is against the manifest weight of the evidence, that a verdict should have been directed for them, error in instructions, and the denial of an exhibit as admissible in evidence.

The errors asserted require a recital of the evidence. The case had been tried previously, with a like result, and this trial followed our denial for leave to appeal from an order which granted this trial. Plaintiffs premise their case on a collision with defendants' semi-trailer truck. Defendants deny any collision. Plaintiffs say that the trailer was in their lane of traffic and the collision unavoidable on their part. Defendants' truck was loaded with lime fertilizer to be be delivered to a farm on a road on which plaintiffs were travelling. The truck and trailer was 30 feet in length and weighed 71,000 pounds when loaded. The defendant-driver arrived at his destination around 6 P.M. The date was November

8, thus it was dark and to compound matters, snowy and rainy. The driver upon arrival backed his rig across the blacktop into the driveway of the farm for which the fertilizer was intended. In doing so, his rig and trailer blocked both lanes. He then noticed the plaintiffs' vehicle approaching about one-half mile or less away and, as he testified, he pulled his semi-trailer completely out of the driveway, and back into his lane. Thus, he argues, it was impossible for plaintiffs to strike the rear end of his trailer as he was not in their lane. Plaintiffs, husband and wife at the time of the trial, but bride and groom at the time of the accident—they were to be married that evening—present a contrary view of the facts, needless to say. He testified that upon approaching the scene he saw defendants' semi-trailer straddling the blacktop and he thereupon braked and swerved to the right to avoid a collision—which he says he was unable to do, striking the back end of the trailer with his automobile and continuing onto the shoulder in front of the driveway where defendants' truck had previously been. His car turned over and came to rest in a drainage ditch. She was badly injured. Both testified that he was traveling at a speed of from 50 to 55 mph—the defendant-driver says 75 mph. While approaching defendant's truck she testified that she said nothing to him with regard to its presence. The precise question seems to be whether defendants' truck was completely in its lane of traffic, or as plaintiffs assert, did a part of it extend into their lane?

The following morning, a State trooper examined plaintiffs' automobile noting the left rear section of the car and that the tail light had been torn off. Sod was imbedded under the car between the front wheels. He examined defendants' truck and testified that he found fresh scratches and indentations in the metal of the trailer on the left rear corner. Following such examination, the State Trooper and the father of one of the plaintiffs returned to the scene and found various parts of reflector glass and other pieces of glass and metal at the edge of the driveway leading to the farm which defendants' driver said he backed into and out of. The left rear reflector on the trailer was missing and particles of reflector-type glass were found at the scene of the collision. The glass imbedded in the trailer and the glass at the scene were submitted into evidence, but the reflector and other particles were denied admission. The driver testified that the reflector could have been dislodged elsewhere.

■■ Is the state of the evidence as we have summarized it such that we should order a new trial or in the alternative direct that the trial court enter a judgment notwithstanding the verdict and proceed to the issue of damages? The *Pedrick* rule says, with regard to the latter, that we should do so—*i.e.*, the trial judge should have done so, only where all of the evidence viewed in its aspect most favorable to the defendants

so overwhelmingly favors plaintiffs that no contrary verdict based on that evidence could ever stand. (*Pedrick v. Peoria and E. R.R. Co.*, 37 Ill.2d 494, 229 N.E.2d 504.) Clearly, we think, that the *Pedrick* rule is not applicable here, as we cannot say that the evidence so overwhelmingly favors plaintiffs that no contrary verdict could ever stand.

Plaintiffs point to *Hale v. Cravens*, 129 Ill.App.2d 466, 263 N.E.2d 593, as conclusive. However, in *Hale*, a preferential highway was involved and as the court pointed out, the only bar to plaintiffs' recovery "would be their own contributory negligence." The court then noted there was no evidence supportive of negligence on the part of the plaintiffs, that is, there was nothing to alert them that another vehicle approaching along a secondary road controlled by a stop sign would not obey it and yield the right of way. This case is not controlling, if for no other reason, than plaintiffs' evidence itself raises questions of fact as to contributory negligence.

Thus, we must now determine whether a new trial should have been granted, for even though the evidence supports the verdict to some extent, negating application of the *Pedrick* rule, if it is against the manifest weight of the evidence, a new trial would be in order. But a wrinkle appears here, if there has been a prior trial with a like result—which is not true under the *Pedrick* rule. In other words, the verdict of the first trial for defendants does impinge in deciding whether or not the weight of the evidence at the second trial is manifestly against the verdict. (*Russell v. Rowe*, 82 Ill.App.2d 445, 226 N.E.2d 652.) We quote:

> "When successive verdicts in the same case on substantially the same evidence are in favor of the same party reviewing courts are reluctant to disturb the verdict as contrary to the weight of the evidence." 82 Ill.App.2d at 449.

Here, plaintiffs argue that the facts are undisputed and show that defendants' driver was guilty of negligence. But this argument, in our evidentiary context, has to assume that the driver was unworthy of belief. Plaintiffs argue that his testimony was self-serving—exculpatory—but such characterizations in and of themselves do not cause his testimony to count for naught. Nor does it suffice to make his testimony incredible. Relative to the speed of plaintiffs' automobile, they point to some calculations the driver was asked to make on cross-examination which could have impeached his opinion that their speed was 75 miles per hour. That he may have been mistaken—he asserted that he wasn't— does not render his testimony incredible, from plaintiffs' point of view, nor credible, from his point of view—as a matter of law. In short, it was for the jury to decide whether to take his story or theirs. The fact that their testimony was unimpeached coupled with the physical evidence

gathered at the scene which was admitted, does not, *ipso facto,* destroy defendants' evidence. In our opinion, the driver's testimony does raise a question of fact. In other words, his testimony is not inherently improbable. A verdict is against the manifest weight of the evidence where the opposite conclusion is clearly apparent or the findings appear to be unreasonable, arbitrary, and not based on the evidence. In our opinion, the verdict here is not that. *Miller v. DeWitt,* 59 Ill.App.2d 38, 208 N.E.2d 249.

■■ As we have noted, some of the debris at the scene was admitted into evidence, but the reflector glass was not. The weight of the physical evidence admitted as to whether or not it sustained plaintiffs' position was clearly a matter for the jury—it does not, as plaintiffs argue, render defendant-driver's testimony incredible. There was no direct tie up between the reflector glass found at the scene and the reflector glass missing from the left rear of the trailer. That being so, no error was committed in denying its admission into evidence. It was a common type of reflector glass, or so the testimony showed, and the defendants—agent of owner corporation and driver, testified that this type of reflector was not the kind used on their truck. Another point, which the jury may very well have taken into consideration as to whether or not a collision occurred—points of contact allegedly being the left rear of plaintiffs' car and the left rear of the trailer—is that the trailer's bed was about 4 feet from the ground and the rear of the car about 3 feet. We are not saying that it didn't happen, all we can say is that a factual question is presented and that being so, it is not for us nor the court below, but for a jury to decide what the true facts are.

■■ With regard to the issue of contributory negligence—that is, should there have been any instructions at all, as to the plaintiff-driver, clearly there was a factual question. The issue of speed alone, in our opinion, could raise the issue. Plaintiff cites the *Hale* case, previously noted above, as rendering the element of speed non-operative in our context. However, the factual situation, as we have pointed out, between that case and this is substantially different. Speed here was an issue, it was raised, and it goes directly to the issue of contributory negligence on the part of both plaintiffs and most particularly as to plaintiff-driver. As to the passenger, we can only say that the failure to do anything does raise a question of fact for the jury to consider as to whether or not she was contributorily negligent. It was dark, the weather was rainy and snowy, they were traveling on a blacktop, therefore speed and the condition of the roadway were relevant factors. Plaintiffs themselves testified that their speed was 50-55 mph and that creates an issue of fact for triers of fact who might well conclude that even their opinion as to speed—

25 mph less than defendants' testimony—was excessive in the situation that faced them. Whatever the speed, it was sufficient to cause a skid for 190 feet on the blacktop, another 190 feet on the shoulder with enough force remaining to turn plaintiffs' automobile—a Chevrolet Chevelle—over and for it to slide into the drainage ditch—and this is without regard as to whether it hit the left rear of defendants' truck as plaintiffs maintain or some other obstruction, such as a culvert, as defendants maintain. Under the circumstances as presented to us, it is our opinion that an issue was raised as to whether plaintiffs did keep a proper lookout and did exercise reasonable care to avoid a collision. *Miles v. Sears Roebuck & Co.*, 1 Ill.App.3d 144, 147, 273 N.E.2d 68, cited to us by defendants, is in point:

> "It has been held many times that a driver of an automobile who does not maintain a proper lookout and use every reasonable precaution to avoid a collision with the traffic ahead is negligent."

Of course a passenger cannot be vicariously guilty of contributory negligence. The negligence of the driver here, in other words, is not imputed to her. But, a duty does remain, as pointed out in *Zank v. Chicago, R.I. & P. R.R. Co.*, 17 Ill.2d 473, 482-483, 161 N.E.2d 848.

> " 'The law fixes the same standard of duty for a passenger as for a driver of an automobile—the exercise of reasonable care for his own safety, but the conduct which reasonable care requires of a passenger will not ordinarily, if in any case, be the same as that required of a driver because their circumstances are different. * * * It is the duty of a passenger in a vehicle, where he has an opportunity to learn of danger and to avoid it, to warn the driver of such vehicle of approaching danger, and he has no right, because someone else is driving, to omit reasonable and prudent efforts on his own part to avoid danger" * * *'."

She was not asleep, or in a position not to observe the same conditions as her driver. Indeed, her testimony as to salient particulars echoed his. This being so, it is our opinion that a factual question was presented for resolution by the jury as to whether or not she negligently contributed to her injuries. The *Pedrick* case (63 Ill.App.2d 117, 125, 211 N.E.2d 134) is pertinent at this juncture. We quote:

> "A passenger riding in an automobile must exercise due care for his own safety, and if he has an opportunity of learning of approaching danger, and has the opportunity to avoid said danger, he must warn the driver of such danger. Such passenger, merely because someone else is driving the car, has no right to omit prudent efforts on his part to avoid danger."

The cases cited by plaintiffs to negate an issue of fact have to do with

sudden appearances of other vehicles—totally unexpected and not to be expected by reasonable plaintiffs in their various factual settings. But here both plaintiffs testified that they saw the lights of defendants' truck at least half a mile away when they turned on to the blacktop in question. The fact that they could not, as they testified, determine whether it was a truck and on their side of the road does not, if true, cause the presence of defendants' vehicle to bear the appendages of suddenness. This being so, the IPI instructions as to contributory negligence were properly given and we can discern no undue emphasis on this issue from the instructions so tendered and given.

Accordingly, the judgment appealed from is affirmed.

Affirmed.

TRAPP and CRAVEN, JJ., concur.