RONALD E. FOSTER, Plaintiff-Appellee, *v.* DAVE LANCIAULT, d/b/a Dave's Club, Defendant-Appellant.

Third District   No. 78-177

Opinion filed April 18, 1979.

John W. Robertson and Steven L. Nelson, both of Bozeman, Neighbour, Patton & Noe, of Moline, for appellant.

Alan K. Schmidt and Marshall E. Douglas, both of Jackson, Douglas, DePorter & Schmidt, of East Moline, for appellee.

Mr. PRESIDING JUSTICE STOUDER delivered the opinion of the court:

Plaintiff, Ron Foster, commenced this dramshop action against the defendant, Dave Lanciault, d/b/a Dave's Club, to recover for injuries he sustained in a fight with John Phillips, the alleged intoxicated person. The defendant filed an affirmative defense that plaintiff provoked the fight which caused his injury. The jury awarded the plaintiff $12,000 and the circuit court of Rock Island County entered judgment for that amount. This appeal followed.

On appeal defendant contends the trial court erred in not granting his motion for a directed verdict and in denying his motion for a new trial.

One of the defendant's objections concerns the admission of testimony concerning John Phillips' activities before his arrival at the defendant's drinking establishment.

Wilbur Brown testified to spending part of October 11, 1975, with John Phillips, his son-in-law, and Dwayne Brown, his son. According to the elder Brown, the three were together from approximately 10 in the morning until between 5:30 and 6 that evening. During this time, they were driving around the area looking for a transmission for Phillips' car. On three separate occasions they stopped at package liquor stores and purchased various amounts of beer totalling 30 cans. While Wilbur Brown stated that only a case was actually consumed, his testimony also suggests the entire 30 cans were consumed. The three consumed the beer more or less in equal amounts. Between 5:30 and 6 p.m., Brown dropped off his son and Phillips at the apartment the two were sharing and he did not see Phillips again that day.

Counsel for defendant objected to plaintiff examining Brown about Phillips drinking between 10 a.m. and 6 p.m. However, upon promises by plaintiff's counsel that he would connect this testimony with evidence that Phillips continued drinking until his arrival at Dave's Club, the court overruled defendant's objection.

Dwayne Brown testified to arriving at their apartment between 5 and 6 p.m. and then having supper with Phillips. According to Brown, Phillips did not consume any beer while at the apartment. Phillips left the apartment sometime between 6 and 7 p.m. The witness next saw Phillips at 9 p.m. at Dave's Club where the witness had gone to obtain some soft drinks. During the brief time he was there, Brown saw Phillips drinking a can of beer. When Brown next saw Phillips at approximately 1:30 a.m. the next morning, Phillips looked as though he had been in a fight. Brown believed that Phillips was under the influence of alcohol at that time, but that he also had control of his faculties.

The events that occurred at Dave's Club were testified to primarily by the plaintiff and Kathy Clompton. Clompton testified that Phillips

arrived at Dave's Club sometime after 9 p.m. At the time Phillips arrived, Clompton was sitting next to plaintiff at the bar drinking beer and Phillips sat down next to her on the other side. Clompton was unable to recall exactly the number of beers that were consumed by each of the three, but she did state that the three of them were steadily drinking beer from 10 p.m. to 2 a.m. the next morning and that Phillips had more than two beers. Clompton did not believe that Phillips was intoxicated, but also considered intoxication to mean "completely drunk." The witness stated Phillips was under the influence, which she interpreted to mean "feeling good." Both Clompton and the plaintiff testified to continuing verbal disagreements which occurred between Phillips and the plaintiff during the course of the evening.

According to the plaintiff's testimony, he finally accepted Phillips' invitation to settle their differences outside the bar after repeated efforts by Phillips to induce the plaintiff to go outside with him. Once outside the bar the two squared off to fight, but no blows occurred immediately. Plaintiff then said, "We came out here to fight, so lets either do it or I don't have time for you. I'm going in and drink my beer." At this point plaintiff turned to go inside the bar and Phillips then hit plaintiff in the left eye. The ensuing fight was momentarily interrupted, apparently at the insistence of Clompton who had come out of the bar after the fight had begun. Examination of the record reveals conflicting evidence as to whether plaintiff was bleeding at this time, but it is certain that he had been struck in the eye and his eye was sore. After the fight continued, Phillips repeatedly struck plaintiff in the region of his left eye. As a result of the fight, plaintiff lost the sight in his left eye. On cross-examination plaintiff admitted to having drunk considerable amounts of beer during the evening. Defendant presented no evidence. In response to a special interrogatory, the jury found that the plaintiff did not provoke the fight. The jury awarded plaintiff $12,000 in damages and the defendant appealed.

Defendant initially argues the trial court erred when it denied defendant's respective motions for a directed verdict and for judgment *n.o.v.* Defendant contends that under the well-known standard set forth in *Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 229 N.E.2d 504, the evidence overwhelmingly establishes defendant's affirmative defense of provocation and there was no competent evidence of Phillips' intoxication. We disagree.

In arguing plaintiff's provocation as a matter of law, defendant focuses on the statement plaintiff made immediately before being struck for the first time and the momentary lull that occurred in the fight. According to defendant, plaintiff's statement set forth previously incited Phillips to violence. When the fight was momentarily interrupted later on,

plaintiff was as yet uninjured and it was plaintiff who then became the aggressor. We find defendant's arguments unpersuasive.

■■ Issues of provocation resulting from a fight such as occurred here are usually best resolved by a jury. The witnesses and participants to the fight typically have consumed intoxicating beverages and their ability to perceive and recall is thereby diminished. The effect and significance of the heated exchange which usually accompanies or precedes the fight is difficult to assess. In the present case, the fight was the result of several hours of heated conversation between Phillips and the plaintiff. Viewing the evidence in its aspects most favorable to the plaintiff, it appears that Phillips made a concerted effort to draw the plaintiff into a fight, efforts that were initially rebuffed by plaintiff. When plaintiff finally accepted Phillips' invitation, it was, according to plaintiff, because of excessive amounts of abusive and profane language which Phillips directed towards plaintiff. It was Phillips who struck the first blow. When the first blow was struck, plaintiff had already turned away to return to the bar. We have examined the testimony regarding the break in the fighting and do not believe it requires as a matter of law the conclusion that plaintiff reinitiated the fight. To the contrary, during cross-examination plaintiff denied reinitiating the fight. We believe the question of provocation was for the jury, and the jury found in a special interrogatory that plaintiff did not provoke the fight.

■■ The evidence regarding Phillips' intoxication stands on a similar plane. Various conflicting opinions were offered by the witnesses as to the extent of Phillips' intoxication. The trial court was correct in denying defendant's motion for a directed verdict and judgment *n.o.v.* However, we believe errors occurring during trial require granting defendant a new trial.

During closing argument, plaintiff's counsel stated that:

> "He's a tavern owner. He runs a business. It's a responsiblé business, but he assumes the responsibility of the dram shop law. He knew what he was getting into and he knows what the law says. He pays his fees and understands it.
>
> * * *
>
> It [dramshop business] should be regulated and controlled. One way of regulating and controlling is, hey, if your going to run a bar and you sell drinks to people, you're going to make an extra contribution from everybody who buys one and put it in a till and when some body gets hurt as a result of this drinking, you're going to be responsible for it. Everybody who drinks has to contribute, and he knew this when he went into the dram shop business."

Defendant's counsel contends the statements contravene the rule prohibiting mentioning or implying the existence of insurance, as well as

violating a motion in limine which prohibited defendant's counsel from stating, mentioning, alluding, or implying in any manner that liability insurance existed on behalf of defendant.

To inject the existence of insurance into a case is reversible error. (*Cecil v. Gibson* (1976), 37 Ill. App. 3d 710, 346 N.E.2d 448.) The rule prohibits not only expressly referring to liability insurance, but also implying the existence of such insurance. In *Ferrer v. Vecchione* (1968), 98 Ill. App. 2d 467, 240 N.E.2d 439, counsel for plaintiff in his closing argument essentially represented to the jury that defendant, by his absence, had no personal stake in the outcome of the trial. The court held that such argument "carried with it a strong implication of insurance. Moreover, defendant's attitude toward the outcome of the case is in no way relevant to his liability."

We believe the arguments of counsel in this case carry an even stronger implication of insurance. Furthermore, the possible source of the funds to pay any judgment is irrelevant to the issues of liability. Such an improper argument was prejudicial to the defendant and deprived him of a fair trial. We believe it necessary to consider one further assignment of error.

On appeal, defendant contends the testimony of Phillips' drinking between 10 a.m. and 6 p.m. on October 11, 1975, was erroneously admitted and should have been stricken as there was no evidence to connect Phillips' prior drinking with his drinking at defendant's tavern. Without such evidence defendant argues prior drinking was irrelevant.

Phillips' consumption of alcohol during the day appears to have been approximately eight to 10 cans of beer, though the precise amount is uncertain. During this time, Phillips ate two meals. Based upon the testimony of various witnesses, the apparent hiatus between Phillips' drinking during the day and his drinking at defendant's tavern, ranges from three to five hours. Cases involving similar questions of lapse of time are few and of only general application. See generally *Pellico v. Jackson* (1966), 70 Ill. App. 2d 313, 217 N.E.2d 281; *VanHuss v. Allen*, 9 Ill. App. 2d 14, 133 N.E.2d 727; *Corcoran v. Morrison Hotel Corp.* (1949), 339 Ill. App. 203, 89 N.E.2d 431.

Upon considering the foregoing authorities and the facts before us, we believe sufficient time elapsed between Phillips' drinking activities with the Browns and his later drinking at defendant's bar to require some type of evidence to connect the two together. Only if Phillips' consumption of alcohol between 10 a.m. and 6 p.m. contributed to his later intoxication at defendant's tavern should testimony about such drinking be admitted. Evidence showing continued drinking between leaving the apartment and arriving at Dave's Club would establish the necessary connection. The necessary connection could also be shown by

expert testimony demonstrating that when Phillips arrived at Dave's Club, his body contained residual amounts of alcohol from his earlier drinking which lessened his resistance to the effects of alcohol consumed at defendant's establishment. Such evidence would then make Phillips' prior drinking relevant to his later consumption of alcohol at defendant's place of business. Little if any testimony was introduced to establish the extent of Phillips' intoxication, if any, when he arrived at Dave's Club. Based upon this record, it cannot be said there was a probable link between the two separate periods of drinking, and until such a link is established, evidence of prior drinking is too remote to allow its admission. We believe these errors deprived defendant of a fair trial and consequently, a new trial is required.

Due to the view we have taken, we believe it is unnecessary to consider the other errors urged on appeal.

For the foregoing reasons the judgment of the circuit court of Rock Island County is reversed and the cause is remanded for a new trial.

Reversed and remanded.

STENGEL and SCOTT, JJ., concur.