RALPH POTTER *et al.*, Plaintiffs-Appellants, *v.* TAMARA J. RODRICK, Defendant-Appellee.

Third District   No. 79-68

Opinion filed October 10, 1979.

M. G. Gulo, of Streator (Walter L. Stodd, of counsel), for appellants.

Daniel K. Russell, of Johnson, Martin & Russell, of Princeton, for appellee.

Mr. JUSTICE ALLOY delivered the opinion of the court:

Plaintiffs Ralph Potter, Shirley Potter and Terri Potter Calder appeal, contending that inadequate damages were assessed by a jury in the personal injury action against defendant Tamara J. Rodrick.

The instant action was the result of injuries allegedly sustained in an August 2, 1975, automobile accident involving plaintiffs and defendant. Liability was admitted in defendant's answer, and the sole question before the jury was that of damages. Following the hearing of evidence on the issue of damages, which was contradictory, the jury returned verdicts awarding plaintiffs amounts equalling alleged special damages, specifically, in the sum of $160 to Ralph Potter, $826.70 to Shirley Potter, and $480.50 to Terri Calder. Plaintiffs moved for a new trial, and contended that the jury's assessment of damages was inadequate and that the jury overlooked proven elements of damage. The trial court denied plaintiffs' motion for a new trial and specifically commented upon the "serious question" in the evidence as to the credibility of the plaintiffs' testimony. As we have noted, plaintiffs appeal from a denial of the motion for new trial and contend that the assessment by the jury was inadequate and that the jury overlooked proven elements of damage.

■■ We considered the issue presented to this court in the recent case of *Ford v. Baker* (1978), 61 Ill. App. 3d 45, 377 N.E.2d 853. In that case we set forth the rules applicable, in consideration on appeal of the issue as to whether the trial court erred in refusing to grant a new trial by reason of the inadequacy of the jury verdict. In that case we stated:

"The granting of a motion for new trial is a matter of discretion for the trial court. [Citation.] We will not reverse the trial court's ruling unless we find an abuse of discretion, that is, unless we find no reasonable basis in the evidence to support the ruling of the trial court.

The plaintiff has not argued that the jury was improperly instructed. * * * When the jury has been properly instructed, both trial and reviewing courts are reluctant to set aside the amount of the jury verdict. [Citation.] Both courts are well aware that many factors, including credibility of witnesses, are considered by the jury in reaching its verdict. However, when the jury renders a verdict and the amount of damages is palpably inadequate, justice

requires that that verdict be set aside and a new trial ordered. [Citations.]

In order to determine whether the jury verdict on the amount of damages is inadequate, we must consider the record as a whole. * * * The rule set forth in the cited cases is that jury verdicts which are palpably inadequate may be set aside and the only basis for determining whether damages are palpably or obviously inadequate is the sound judgment of the one considering the evidence as a whole." 61 Ill. App. 3d 45, 46-47.

Similar considerations are outlined in the case of *Haleem v. Onate* (1966), 71 Ill. App. 2d 457, 460-61, 219 N.E.2d 94, where the court discussed the variables which enter into a review of the record as a whole. There, the court indicated that to determine whether an award is grossly unfair or the result of a clear oversight by the jury necessarily requires a review of all the testimony surrounding the claimed items of damage. The mathematical computation of the bills received, the court noted, and the alleged loss of earnings represent only part of the total evidence. The court said that accordingly "we do not accept the plaintiff's contention that the sum of the claimed special damages automatically constitutes a minimum level of recovery which is binding upon both the jury and a court of review. Special damages often may be a useful measure" but "need not be an incontestable basis in the determination of a proper award." The *Haleem* case also indicated that there may be evidence which carries an implication that the injuries may be exaggerated or even feigned or that medical treatment was either unnecessary or prolonged. It was also indicated that all these and like factors must be weighed, and if there appears to be evidence suggesting a genuine conflict as to the legitimacy of the expenses incurred, then the verdict of the jury should not be disturbed on review.

We recognize the function of the jury in determining the credibility of witnesses and the weight to be given the testimony of witnesses. The jury is normally instructed to consider all of the evidence in the light of the juror's own experience in the affairs of life. We agree with the *Haleem* court that the prerogative should not be withdrawn from the jury if there is any evidence tending to support its conclusion as to the amount of damages actually sustained.

We have reviewed the entire evidence produced during the trial in the instant case, and we conclude that there is a reasonable basis in the evidence supporting the jury's verdict and the trial court's ruling on the motion for a new trial. The record reveals that the jury had ample reason to question the nature and extent of the alleged injuries to the plaintiffs, as well as the proximate cause of those alleged injuries.

We will summarize briefly the evidence as presented with respect to

the individual plaintiffs. We note, first, that the accident occurred about 6:30 p.m. on August 2, 1975, and that Ralph Potter was driving his automobile, and with him were his wife, Shirley, and their daughter, Terri Calder. Defendant Tamara Rodrick failed to stop at the Richards Road intersection and the two vehicles collided. Potter testified that he was going about 40 to 45 miles per hour at the time of impact. As a result of the collision, plaintiffs testified they were thrown about inside the automobile, although all three remained in their seats after the accident. None of the plaintiffs was unconscious following the accident, or sustained any fracture or laceration, or sustained visible injury at the time of the accident. Ralph Potter testified that he did feel pain in his back and leg when he got out to examine the damage. None of the plaintiffs sought immediate medical attention as a result of the accident. They proceeded from the accident to Ottawa to a bingo game, which was their intended destination. They remained at the bingo game until about 9:30 p.m., when they drove back to their home in Streator in the automobile which was involved in the accident with defendant Rodrick.

Plaintiff Ralph Potter claimed serious and continuing injury to his back and legs as a result of the accident. The X rays, however, which were taken of Mr. Potter, were normal. Two neurologists who had examined Potter could find no objective support for his complaint. The evidence also indicated that Potter had a pre-existing problem with his back, as a result of a 1969 serious back injury. Since 1969, the record indicated, Potter had received many treatments for chronic back problems in the same area as that claimed injured in the accident with the defendant in this case. Dr. Heins, an osteopath and sole medical witness for all three plaintiffs, testified that he noted a gristle-like feeling on palpation in the lower back. He diagnosed the injury to be an inflammation of the muscle fiber in the back area, and he felt the accident aggravated the pre-existing injury. Dr. Heins also stated that all three plaintiffs had been referred to him by their attorney and that he referred them to the neurologists, also on the advice of their attorney. Heins admitted that the objective findings he made, as well as the complaints from Potter, were also consistent with pre-existing injuries to the back area of Potter. Additionally, there was extensive evidence of other pre-accident and post-accident problems as to Potter, much of which cast serious doubt on whether he sustained serious aggravating injury in the accident. It was also noted that Potter claimed continuing pain from the accident and had been treated some two years and four months prior to trial.

■■ When the evidence as to Ralph Potter is examined in its entirety, it could be said that the court could properly have considered that there was "serious question," as stated by the court, as to the causal relationship

between his back problems and the accident with the defendant. The evidence as to the cause and extent of injury was contested and contradictory. In light of these factors, we are unable to say that there was no reasonable basis for the jury's award of damages, in the amount of $160, to Ralph Potter.

■■ Shirley Potter testified that she sustained headaches, lower back pain, a stiff neck, and an arm pain, all of which commenced either the evening of, or the day after, the accident. She saw a physician and was given therapy and pain medication. She took chiropractic treatments. Dr. Heins examined her and found objective symptoms of an injury in the soft tissue and muscle of the lower neck and upper shoulder area, a whiplash injury. He treated her with muscle relaxants, manipulation, and anti-inflammatory medication. During 1976 and 1977, she was treated about 50 times. By August 29, 1977, the date of her last treatment prior to trial, her condition had become chronic. The physician's bill for $826.70 was admitted into evidence. The evidence also indicated that there were contradictory statements by Mrs. Potter concerning her activities immediately after the accident. There were also contradictions concerning the frequency with which she visited Dr. Heins. It was brought out on cross-examination of her treating physician that Mrs. Potter had received two post-occurrence injuries, both having an impact on the neck and back area. Mrs. Potter had denied in her testimony that she sustained injuries or had been involved in any accident causing an injury to those areas subsequent to the automobile accident with the defendant. While the plaintiff Shirley Potter complained of serious restriction in the movement of her arm, the medical findings were largely to the contrary as to such testimony. Additionally, it was brought out that although she claimed acute and painful continuing problems, Shirley Potter had not seen a doctor to treat her whiplash caused problems for over a year prior to trial. She presented no satisfactory explanation of her failure to seek treatment. When the evidence as to Shirley Potter's injuries is examined in its entirety, it could be concluded that serious question arises with regard to whether the injuries were the exclusive result of the accident with the defendant or whether they were the result of the accident and the subsequent accidents. In light of all the evidence as to Shirley Potter, we conclude that there was a reasonable basis in the record for the jury to award Shirley Potter $826.70, the amount of specials shown.

■■ As to the third plaintiff, Terri Calder, she testified to a stiff neck and headaches after the accident and was admitted to the hospital the morning following the accident. She remained at the hospital two days, in traction, and went home still suffering head and neck aches. Dr. Heins testified she was suffering from a whiplash type of injury. She was treated with muscle relaxants, manipulation, and anti-inflammatory medication.

She testified to continuing headaches and pain in the neck area. A bill for services, showing approximately 50 visits over a little more than two years, was introduced, involving the total sum of $480.50. The bill covering hospital services of $98.30 was also introduced. X rays taken showed no abnormality. Dr. Heins, who stated he found objective findings of muscle tightness, also admitted he was only treating the patient's complaints. Two neurologists could find no significant objective findings of injury. Additionally, Terri Calder's testimony as to the amount of specials claimed, as well as the length of her stay in the hospital, was confusing and, at times, contradictory. There was evidence of treatment by Dr. Heins for definitely unrelated problems. Dr. Heins' testimony as to the causal connection between the neck and head problems and the 1975 accident with the defendant could have been considered by the jury and the court as speculative. Dr. Heins testified that the injuries could have been caused from the accident, but that the causes of such injuries, because of their multiple etiology, are difficult to identify with certainty. He admitted that his finding of a causal relationship was based solely on the patient's complaints. The review of the record, with regard to Terri Calder's injuries, reveals some doubt as to the cause of those injuries. There was significant contradictory evidence as to the extent of her injuries. We, therefore, find that there existed a reasonable basis for the jury to award plaintiff Terri Calder the sum of $480.50.

This cause involves evidence which was contradictory as to the questions of causation of the injuries and the extent of injuries. There were serious questions as to the existence and extent of injuries and the necessity of treatment which was received by the plaintiffs. In a case such as the instant case, the evidence suggests a genuine conflict as to the legitimacy of the expenses incurred and, under those circumstances, the verdict of the jury upheld by the trial court will not be disturbed.

We conclude, therefore, that the judgment of the trial court in denying a new trial was proper. For the reasons stated, the judgment of the Circuit Court of La Salle County is affirmed.

Affirmed.

STOUDER, P. J., and STENGEL, J., concur.