RANDALL NEWLIN, a Minor, by Edward Newlin, his Father and Next Friend, Plaintiff-Appellee, v. MICHAEL J. FORESMAN, a Minor, Defendant-Appellant.—(E. B. JONES, Public Adm'r of the Estate of Larry E. Hopper, Deceased, Plaintiff-Appellee, v. MICHAEL J. FORESMAN, a Minor, Defendant-Appellant; DAVID L. ROSS, Plaintiff-Appellee, v. MICHAEL J. FORESMAN, a Minor, Defendant-Appellant.)

Third District    No. 81-123

Opinion filed February 19, 1982.

Watts C. Johnson, of Johnson, Martin & Russell, of Princeton, for appellant.

Anthony C. Raccuglia, of Anthony C. Raccuglia & Associates, of Peru, for appellees Randall Newlin and David L. Ross.

Joseph T. McGuire and Mark J. Condon, both of Perz and McGuire, of Chicago, and Roger L. Williamson, of West, Neagle, and Williamson, of Galesburg, for appellee E. B. Jones.

JUSTICE ALLOY delivered the opinion of the court:

This case arose out of a collision between two cars near Princeton, Illinois. The trial court directed verdicts for two of the plaintiff-appellees on the issue of contributory negligence and against the defendant-appellant on the issue of his negligence. The jury awarded two plaintiffs $37,250 and $32,100, and awarded an additional $52,000 to the estate of Hopper, a plaintiff-defendant. The defendant asked for a new trial in his post-trial motion, alleging several errors in the original trial. The trial court denied this motion and the defendant now appeals.

On October 1, 1977, two cars collided in a head-on collision on

Railroad Avenue, east of Princeton, Illinois. Railroad Avenue is a country road, approximately 20 feet wide with no painted center line. The two cars were occupied by five teenage boys. One car, driven by Larry Hopper, was eastbound on Railroad Avenue. David Ross and Brad Davis, Hopper's passengers, were sitting in the front seat. The second car, driven by Foresman, was westbound. The collision occurred just over the crest of the westernmost of two close, consecutive hills.

Hopper and Davis died in the collision. Randall Newlin, the only passenger in Foresman's auto, suffered injuries in his back and left arm and shoulder. Ross, the surviving passenger from Hopper's auto, suffered a broken left arm, lacerations on his right hand and wrist and a possible concussion. Apparently, Foresman was uninjured.

Newlin, Ross and the Davis administrator sued Foresman and Hopper's administrator. Hopper's administrator also sued Foresman on behalf of Hopper's estate. The Davis estate settled its claims against both defendants. The trial court consolidated the remaining actions and tried them together. We will detail the accident, injuries and events at trial as they become relevant to particular issues.

The defendant first challenges the directed verdicts for the plaintiff-passengers on the issue of their contributory negligence. Newlin testified that Foresman was driving normally until a few seconds before the collision. At that time, Foresman suddenly accelerated to 70 or 75 miles per hour and moved out of his lane. The sudden acceleration began at the top of the first hill. As Foresman approached the top of the second hill, Newlin testified, Foresman was still traveling about 70 miles per hour. Newlin also stated, and the defendant admitted, he wanted Foresman to move back into the proper lane, fastened his seat belt and locked his door. Foresman collided with Hopper seconds later. Foresman testified that he was traveling west on Railroad Avenue no faster than 55 miles per hour. Foresman claims that, after Newlin warned him to move to the right, he slowed down and moved back into his lane.

It is well settled that a trial court should enter a directed verdict only when the evidence, viewed in its aspect most favorable to the opponent, so overwhelmingly favors movant that no contrary verdict based on that evidence could ever stand. (*Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 510, 229 N.E.2d 504.) Foresman argues that Newlin's failure to protest the speed of the vehicle creates an issue of fact for the jury as to whether he was contributorily negligent. Foresman relies on several cases from Illinois which indicate that a passenger has a duty to warn a driver of excessive speed. *E.g., Schultz v. Stephan* (1956), 8 Ill. App. 2d 563, 132 N.E.2d 30 (abstract); *Wilson v. LaCost* (1974), 20 Ill. App. 3d 624, 314 N.E.2d 27; *Hayes v. Alsburg* (1978), 72 Ill. 2d 560, 382 N.E.2d 239.

In *Hayes*, the supreme court ruled the issue of contributory negli-

gence of a plaintiff-passenger who was asleep at the time of the collision was properly before the jury. The plaintiff and driver had traveled all day, were still on the road at 1:30 a.m., traffic was heavy and there was evidence of excessive speed. The court stated, "[a] jury might have inferred that the speeding had been continuous and concluded that an ordinarily prudent passenger would not have gone to sleep under all these circumstances." 72 Ill. 2d 560, 567.

*Hayes* does not, however, mandate a reversal of the judgment here. In *Smith v. Bishop* (1965), 32 Ill. 2d 380, 205 N.E.2d 461, the driver of an auto attempting to pass a truck on the left collided with the truck when it suddenly made a left turn. The plaintiff-passenger testified that, if the defendant's left turn signal was operating before her driver attempted to pass, she did not see it. The supreme court upheld a directed verdict for her on the issue of contributory negligence. "[U]nless the passenger sees an obvious danger which the driver might not see there would be no duty to warn him." 32 Ill. 2d 380, 384.

More recently, in *Bauer v. Johnson* (1980), 79 Ill. 2d 324, 403 N.E.2d 237, the supreme court ruled that a passenger-owner was free from contributory negligence as a matter of law when she did not notice anything unusual in the way her newly licensed son drove the car, next saw the defendant's vehicle approaching from the side and then shouted "look out" when the car was 50 feet from eventual collision. The court quoted *Kalechman v. Drew Auto Rental, Inc.* (1973), 33 N.Y.2d 397, 402-03, 308 N.E.2d 886, 889, with approval:

> "[W]ith the advent of the modern automobile there is no longer any basis for assuming that the passenger, no matter what his relationship to the driver may be, has the capacity to assert control over or direct the operation of a moving automobile. The design of the vehicle, the high speeds at which it travels, the split second timing which is often necessary to avoid collision have all combined to erode the assumption that anyone other than the driver can effectively control the operation of the vehicle in traffic.
>
> In fact, under modern driving conditions anyone who 'allows another to drive would only increase the risk of accidents by interfering with the driver's control of the car or by diverting his attention' [citation]."

Although both cases concern the issue of imputing the negligence of a driver to the owner-passenger of the vehicle, the circumstances are similar to the case at bar and the reasoning is persuasive. Furthermore, this court recently noted that occupants of a vehicle have no practical control over its operation. *Andes v. Lauer* (1980), 80 Ill. App. 3d 411, 399 N.E.2d 990, citing with approval Mirza and Appleman, Illinois Tort Law and Practice §4.7 (1974).

■■ On the issue of contributory negligence, the evidence—in its aspect most favorable to Foresman—indicates that Newlin noticed nothing unusual in the manner of Foresman's driving until one-half mile before the collision. At that point, Foresman accelerated to approximately 70 to 75 miles per hour on the downgrade of the first hill. Newlin, in the 20 seconds between acceleration and impact, told the driver to get to the right side of the road, locked his door and buckled his seat belt. Newlin sufficiently warned Foresman that his driving now posed a threat to their safety. The fact that Newlin could not or did not detail everything that was dangerous about the defendant's driving in those seconds does not create a question of contributory negligence. Moreover, an explicit statement on the speed of the vehicle was unnecessary, because Foresman admitted he was slowing down as he moved back into his lane. Foresman took Newlin's statement and actions as a broad warning. Under these circumstances, Newlin cannot be held contributorily negligent. The trial court did not err in directing a verdict on this issue.

Similarly, the trial court did not err when it directed a verdict in favor of the other plaintiff, Ross, on the issue of his contributory negligence. Ross, the only surviving occupant of the eastbound Hopper auto, suffered retrograde amnesia as a result of the accident. He does not recall the accident itself or what happened seconds before impact. According to his unrebutted testimony, he noticed nothing unusual in the way Hopper drove the auto. As they came up the hill, he saw headlights shining in the air. He stated that Hopper was in the eastbound lane at that time, though conceded on cross-examination that Hopper might have been over the center line.

■■ As *Smith v. Bishop* and *Andes v. Lauer* indicate, a passenger has no duty to warn the driver unless he sees a dangerous condition developing and appreciates that danger. Ross, as a matter of law, did not see and ignore an obvious impending danger. (*Andes v. Lauer* (1980), 80 Ill. App. 3d 411, 415.) The trial court properly directed a verdict in favor of Ross as to his freedom from contributory negligence.

The defendant next challenges the directed verdict against him on the issue of his negligence. The directed verdict was proper, under the *Pedrick* rule, if the evidence, viewed in its aspect most favorable to Foresman, so overwhelmingly favors the plaintiffs that no contrary verdict would be permitted to stand. Foresman testified that he believed he was traveling at 55 miles per hour. He based his belief on the treacherous condition of the road. Under adverse examination, he stated that he was not looking at the speedometer, and conceded he could have been traveling 70 miles per hour. He also testified that he was in his lane at the time of the collision.

Besides Newlin's testimony, the plaintiffs produced two other wit-

nesses: Deputy Muratori, who investigated the scene of the accident and David Rumley, an eyewitness. Rumley testified that he was behind Foresman for a mile and saw his car go up the second hill. He also stated that Foresman was driving approximately 70 miles per hour when he was traveling up the hill, and that Foresman was off the road on the south shoulder (thus, in the incorrect lane) at that point.

Deputy Muratori described the scene of the accident. The point of impact was 98 feet west of the top of the hill. The deputy determined that the vehicles were in the same position when he arrived as they were immediately after impact. Debris and gouge marks were in the eastbound (Hopper's) lane. There was no debris in Foresman's lane. Foresman's car left a 50-foot skid mark entirely in Hopper's lane. When the skid mark started, Foresman's car was more than halfway into the oncoming lane. Although Muratori believed both vehicles were over the imaginary center line, he concluded that the point of impact was in the eastbound lane.

The defendant relies on cases which state that driving on the wrong side of the road is not negligence as a matter of law, but is a question of fact for the jury. (*E.g., Andres v. Green* (1955), 7 Ill. App. 2d 375, 129 N.E.2d 430; *Polkey v. Phillips* (1980), 86 Ill. App. 3d 677, 408 N.E.2d 348.) In *Andres*, the defendant contended she was confronted by two cars traveling abreast and swerved into the left lane. In *Polkey*, the defendant contended he had to apply his brakes suddenly, causing his vehicle to skid into the opposite lane, when the car in front of him suddenly braked. The juries in those cases could have logically concluded the defendants acted reasonably. In the case at bar, the physical evidence clearly indicates that Foresman was more than halfway into the left lane, one-half second before impact. He offers no reasonable explanation for this presence.

Foresman argues the jury could reasonably infer that he was driving at a safe speed, that Hopper was in the middle of the road and that Hopper's position was the sole proximate cause of the accident. We believe that plaintiff has satisfied the *Pedrick* rule. The physical evidence, including the position of the debris and the skid marks, is strong support for the testimony of the other witnesses. Moreover, Foresman himself admits he was over the center line at one point and was equivocal on his speed. The dissent in this case makes much of Foresman's testimony that he was in his lane at moment of impact. Recognized laws of physics, however, dictate that his car must have been at the points where it left a skid mark. The skid mark is 50 feet long and starts halfway in the opposite wrong lane of traffic. Assuming Foresman was traveling 55 miles per hour, as he said he was, the skid mark indicates that he was halfway over the center line approximately one-half second before impact.

The fact that Foresman testified contrary to the overwhelming evidence does not necessitate a jury determination on the question of his

negligence. "[T]he presence of *some* evidence of a fact which, when viewed alone may seem substantial, does not always, when viewed in the context of all the evidence, retain such significance. As the light from a lighted candle in a dark room seems substantial but disappears when the lights are turned on, so may weak evidence fade when the proof is viewed as a whole." (*Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 504-05, 229 N.E.2d 504.) The dissent also notes that Hopper's auto may have been over the center line also. Assuming that is true, it does not vitiate the validity of the directed verdict against Foresman on the issue of his negligence. Hopper's contributory negligence is not an issue before this court. That issue went to the jury, and the jury found against the defendant Foresman. Even if Hopper was also over the center line, the jury would have to conclude that Foresman was also a proximate cause of the collision and that his actions constituted negligent driving. Considering all the evidence in the light most favorable to Foresman, the evidence so overwhelmingly favors the plaintiffs that no contrary verdict could ever stand on the issue of Foresman's negligence.

The defendant alleges that he was prejudiced by the trial court's failure to enforce its orders and also claims the suits of Ross and Newlin against the estate of Hopper were shams. Foresman argues in his brief that Hopper did not answer the plaintiffs' complaints, though the plaintiffs point out—and the defendant concedes in his reply brief—that Hopper's estate did file tardy answers. When counsel for Hopper did not file answers or otherwise plead, the trial court *sua sponte* ordered Ross and Newlin to obtain default decrees against Hopper or suffer dismissal of their suits. The plaintiffs did not obtain the default judgments, and the court did not dismiss the complaints. Foresman argues that this refusal to act demonstrates their suits were shams and that this worked to his prejudice. Foresman cites no authority which would require the plaintiffs to obtain default decrees or object to untimely answers. The mere fact that they did not object is as indicative of knowledge of grounds for relief from a default judgment as it is of collusion between the parties.

Foresman also argues, however, that the plaintiffs' voluntary dismissal of their claims against Hopper at the close of all the evidence proves the suits were not genuine in the first place. The defendant adds that these actions worked to his prejudice, because the jury must have viewed these motions as exoneration of Hopper. Counsel for Hopper reply that only after the evidence is presented at trial can the plaintiffs determine that no cause of action exists.

■■ A motion for voluntary dismissal of a plaintiff's suit after trial has begun is addressed to the discretion of the court and is reversible only for abuse of that discretion. (Ill. Rev. Stat. 1979, ch. 110, par. 52; *Bauman v. Advance Aluminum Casting Corp.* (1960), 27 Ill. App. 2d 178, 184, 169

N.E.2d 382.) In *Turnbull v. Porter* (1965), 55 Ill. App. 2d 374, 206 N.E.2d 97, this court ruled that, under proper circumstances, a plaintiff has a right to voluntarily dismiss his suit against a codefendant regardless of his motives for doing so. Unless the underlying motives manifest themselves in prejudicial acts, there is no basis for reversal. (55 Ill. App. 2d 374, 374h.) Contrary to Foresman's argument, the findings of the jury that Hopper was not contributorily negligent does not prove prejudice. The trial court instructed the jury on finding contributory negligence and Foresman was free to argue it to the jury. The trial court did not abuse its discretion in granting plaintiffs' motion for voluntary dismissal of Hopper as a defendant.

■■ The defendant next argues that the trial court disproportionately allocated the number of *voir dire* peremptory challenges. The trial court decided to permit nine challenges per side, giving Newlin and Ross six plaintiff challenges, Foresman six defendant challenges and Hopper three plaintiff challenges and three defendant challenges. Foresman argues the plaintiffs received 12 challenges because Hopper was not a genuine defendant. This argument is predicated on the notion that the suits against Hopper's estate were not genuine. In light of our ruling on that question, we find no disproportionate allocation of challenges. Foresman also claims that the trial court gave each side nine challenges contrary to section 66(1) of the Civil Practice Act (Ill. Rev. Stat. 1979, ch. 110, par. 66(1)). The maximum, he contends, is eight per side. This argument is without merit. The trial court may, in its discretion, allow both sides up to three additional challenges for each additional party on the side having the greater number of parties. In this case, the court could have permitted six additional challenges, for a total of 11. See Ill. Rev. Stat. 1979, ch. 110, par. 66(1); Ill. Ann. Stat., ch. 110, par. 66(1), Joint Committee Comments, at 288 (Smith-Hurd 1968).

■■ ■ The defendant next appeals the trial court's refusal to instruct the jury that personal injury awards are not subject to income tax. He cites *Norfolk & Western Ry. Co. v. Liepelt* (1980), 444 U.S. 490, 62 L. Ed. 2d 689, 100 S. Ct. 755, to support his argument. In *Liepelt*, the United States Supreme Court held that juries should be instructed in the nontaxability of damage awards in cases brought under the Federal Employer's Liability Act (45 U.S.C. §51 *et seq.* (1976)). The Illinois Supreme Court has ruled that juries should not be instructed on the tax consequences of damage awards. (*Hall v. Chicago & North Western Ry. Co.* (1955), 5 Ill. 2d 135, 150-52, 125 N.E.2d 77; *Raines v. New York Central R.R. Co.* (1972), 51 Ill. 2d 428, 430, 283 N.E.2d 230, *cert. denied* (1972), 409 U.S. 983, 34 L. Ed. 2d 247, 93 S. Ct. 322.) The defendant argues that these cases are overruled by *Liepelt*, because they were also FELA cases. Although that is true as to FELA cases, this court, however, is not bound by *Liepelt* as to claims

arising under State law. *Hall* and *Raines* are directly applicable to the case at bar, and the trial court properly followed those cases.

The defendant next charges that the plaintiffs improperly injected the question of insurance into the case through their *voir dire* questions and through the testimony of Deputy Muratori. Counsel for plaintiffs repeatedly asked prospective jurors if they were ever involved in auto accidents and, if so, if they were involved in litigation or made a "claim" as a result of those accidents.

■■ We first note that the scope of *voir dire* examination rests within the discretion of the trial court. Second, the general rule is that where the record shows that counsel intended to improperly inform the jury on *voir dire* that the defendant is insured, and where the circumstances demonstrate a prejudicial effect, such conduct is reversible error. (*Dinger v. Rudow* (1957), 13 Ill. App. 2d 444, 448, 142 N.E.2d 128.) The case at bar falls outside this rule. Counsel here asked the jurors questions to ascertain their familiarity with auto accidents and the consequences of such accidents. He did not state or imply that any party was covered by insurance. On this basis, *Foster v. Lanciault* (1979), 70 Ill. App. 3d 962, 388 N.E.2d 1140, cited by Foresman, is distinguishable. The trial court did not err in permitting counsel to ask whether jurors were ever involved in lawsuits or insurance claims as a result of an auto collision.

The defendant also claims he was prejudiced when plaintiffs' witness, Deputy Muratori, inadvertently mentioned the existence of insurance. During redirect examination, this colloquy with the deputy occurred:

"Q. And were you ever talked to by someone in reference to this particular accident?

A. I believe the insurance companies contacted me for a copy of the report."

The record indicates this comment was unintentional and that nothing further was said concerning insurance. Foresman moved for a mistrial on the basis of this comment. The court denied the motion and gave the jury an Illinois pattern instruction not to infer or consider the existence of insurance.

The defendant relies on *Cecil v. Gibson* (1976), 37 Ill. App. 3d 710, 346 N.E.2d 448, for his argument that the inadvertent mention of insurance constitutes reversible error. In *Cecil*, the defendant doctor, in a medical malpractice suit, testified that he prepared insurance forms for the plaintiff. This is far more prejudicial than the vague, general comment in the instant case.

■■■ In *Kitsch v. Goode* (1977), 48 Ill. App. 3d 260, 362 N.E.2d 446, the Illinois Appellate Court noted that courts generally are more tolerant of references to automobile liability insurance due to its universal prevalence. (48 Ill. App. 3d 260, 266.) A mistrial is not appropriate where the

reference—by someone other than the plaintiff's counsel—was inadvertent and with no intent to prejudice the defendant. (See also *Williams v. Consumers Co.* (1933), 352 Ill. 51, 56, 185 N.E. 217; *Burnett v. Caho* (1972), 7 Ill. App. 3d 266, 273-74, 285 N.E.2d 619.) We find no error in the trial court's refusal to enter a mistrial.

■■ The appellant next contends the plaintiffs asked questions of their witnesses, of a third-party witness and of the defendant concerning the consumption of alcohol. He claims that intoxication was never an issue and the plaintiffs asked those questions only to establish suspicions in the minds of the jurors. At trial, plaintiffs' counsel asked Ross:

"Q.: Oh, incidentally David, at any time from the time that you were with Larry Hopper, until the time you were brought to the hospital or after this impact, did you have anything of an intoxicating or alcoholic nature to drink?

Mr. Johnson: Objection.

The Court: Sustained. Let's have a side bar.

Mr. Raccuglia: I asked if he had anything to drink of an intoxicating nature.

Mr. Johnson: He has, let's have an answer.

The Court: All right, withdraw the objection?

Mr. Johnson: Yes.

A.: No, I did not have."

Defense counsel did not make any further objection and, in fact, asked David Rumley (a nonparty eyewitness) whether he or Foresman had anything alcoholic to drink. The defendant has waived objection on this ground. Even on the merits, we note that counsel presented the evidence concerning the lack of consumption of alcohol in a positive aspect, perhaps to defeat any suspicion in the jurors' minds that five teenage boys out driving on a Saturday night probably were drinking. Indeed, the appellant implicitly concedes, in his reply brief, the jury would be likely to suspect such behavior by teenage boys. The defendant's reliance on *Clarquist v. Kirschenman* (1978), 55 Ill. App. 3d 76, 370 N.E.2d 840, is misplaced. In *Clarquist*, the irrelevant questioning as to consumption of intoxicants occurred during an attempt to impeach through conjecture and innuendo. Here, presumably, plaintiff's counsel was not trying to impeach his own witnesses and, in fact, the lack of presence of alcohol was the focus of all questioning.

·Foresman next appeals the allegedly erroneous admission of evidence remote from the scene of the accident. On direct examination, plaintiff's counsel asked questions of Rumley concerning Foresman's driving one or two miles from the scene, when Foresman passed Rumley's car at an intersection. Defense counsel for Foresman did not object. When counsel for Hopper cross-examined, he asked whether Foresman ran the stop sign

at the intersection. An objection by Foresman was overruled on the grounds that the question was within the scope of direct examination. Rumley answered equivocally, noting that he did not see Foresman stop. The plaintiff's counsel also questioned Newlin about Foresman's driving prior to the collision. Defense counsel again objected and the trial court overruled. Newlin stated that they passed Rumley's car at the intersection and that there was nothing unusual in the manner in which Foresman was driving. Counsel for Hopper's estate, during cross-examination, asked about the stop sign again, and Foresman's objection was sustained.

■■ Contrary to Foresman's contentions, his conduct as a driver prior to the collision is relevant. Foresman, in his earlier argument concerning contributory negligence, relies on *Hayes v. Alsburg* (1978), 72 Ill. 2d 560, 382 N.E.2d 239. In *Hayes*, the supreme court ruled that the question of a passenger's contributory negligence, when he was asleep at the time of the collision, is a question for the jury where it could infer the driver consistently exceeded the speed limit. If conduct remote from the scene can be used to prove a passenger had warning of negligent driving, then conduct at a similar point in time must also be relevant to determine there was no warning of dangerous driving. Here, Newlin sought to establish that Foresman was driving normally, that there was no cause for alarm, and that the erratic driving started less than one-half mile—or 20 to 30 seconds—before impact.

Foresman's reliance on *Flesberg v. Prince Warehouse Co.* (1962), 37 Ill. App. 2d 22, 184 N.E.2d 813, is misplaced. In *Flesberg*, evidence of driving remote from the scene of the collision was improperly admitted to prove the negligence of the defendants. In the case at bar, *Hayes* indicates that plaintiff-passengers can establish their freedom from contributory negligence by demonstrating otherwise normal operation of the auto by the drivers.

Foresman next argues he was prejudiced by plaintiff counsel's closing argument. During rebuttal arguments, counsel for plaintiffs stated that Foresman's father was a doctor and a colleague of Dr. Wilson, one of the medical witnesses. Foresman claims that there was no evidence that Dr. Foresman was the defendant's father (though he concedes that plaintiffs' counsel did mention this during *voir dire*), that there was no evidence concerning the relationship between Dr. Foresman and Dr. Wilson and that the effect of the statement was to distort medical testimony and to insinuate the defendant was wealthy.

■■ Assuming the facts concerning the relationship between Dr. Foresman, the defendant and Dr. Wilson were not properly before the jury, we nonetheless find no reversible error. The comments were neither inflammatory nor vituperative. *Regan v. Vizza* (1978), 65 Ill. App. 3d 50, 382 N.E.2d 409, and *Cecil v. Gibson* (1976), 37 Ill. App. 3d 710, 346 N.E.2d

448, cited by the defendant, are not in point. In those cases, counsel made unwarranted personal attacks on opposing counsel and medical experts. The statements were far more volatile than the one defendant objects to here. In addition, the mere mention that the defendant's father is a doctor does not insinuate his minor son is independently wealthy.

■■ Finally, the defendant contends the verdicts were excessive. The evidence concerning the injuries to Newlin and Ross was conflicting. It is for the jury to determine weight and credibility of the evidence, as well as to find the extent and compensation of injuries. (*Potter v. Rodrick* (1979), 77 Ill. App. 3d 7, 395 N.E.2d 746.) In light of the evidence before the jury, the verdicts for these two plaintiffs are not excessive. Additionally, we do not find verdicts for $52,000 in the Hopper estate's wrongful death action to be excessive. See *Baird v. Chicago, Burlington & Quincy R.R. Co.* (1976), 63 Ill. 2d 463, 349 N.E.2d 413 (verdicts of $188,000 for each of the wrongful deaths of two minors held not excessive).

For these reasons, the judgments of the trial court are affirmed.

Affirmed.

BARRY, J., concurs.

JUSTICE HEIPLE, dissenting:
This case should be reversed and remanded because of a single but monumental error. The trial court directed a verdict against the defendant, Foresman, on the issue of his negligence in the face of credible evidence that Foresman was not negligent. This is not to say that a jury verdict against Foresman would not be sustainable. Indeed it would. As there was evidence on both sides of Foresman's negligence, a jury verdict would have been sustainable either way. However, it was manifestly not the trial court's prerogative to take this matter away from the jury.

The *Pedrick* test is well known. Often misquoted, it is more often mistakenly interpreted. An explicit difference exists between the criterion necessary to direct a verdict and that sustaining a motion for a new trial. In the latter instance, the court will weigh the evidence and set aside the verdict where it is contrary to the manifest weight of the evidence. But where a motion for a directed verdict is presented, a more conclusive evidentiary standard is required than that which would sanction granting a motion for a new trial. (*Mizowek v. De Franco* (1976), 64 Ill. 2d 303, 310, quoting *Pedrick v. Peoria and Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 509-10, and *Jardine v. Rubloff* (1978), 73 Ill. 2d 31, 35-37.) My colleagues, in paying lip service to the *Pedrick* rule, obscure this distinction when they conclude that directing a verdict on the issue of Foresman's liability was correct. I dissent.

The collision happened west of Princeton on a two-lane highway. The Foresman vehicle was westbound; the Hopper vehicle eastbound. The road's topography is unusual, deceptive, and in local patois known as "roller coaster hill." Its grade consists of two camel-backed hills, such that vehicles travelling in opposite directions cannot see each other until they reach the crest of the second hill. It is exactly at that locus where the accident creating this litigation occurred.

In addition to the testimony the majority notes, Foresman testified he did not know where the cars, in relation to the parties' respective highway lanes, collided. He admitted at one point he was partially in the wrong lane, but he stated he had corrected his lane usage five to 10 seconds prior to the impact and before ascending the second hill. Also, he testified that prior to the crash he saw headlights which "* * * seemed to be coming in my path * * *." Finally, he said he thought he was travelling 55 miles per hour. David Rumley, an eyewitness, declared Foresman's vehicle was in the wrong lane and moving at an excessive rate of speed.

In reconstructing the accident scene, Deputy Muratori said the Hopper vehicle was three feet over the middle of the road, whereas Foresman's car was six inches over. The sole survivor of the Hopper vehicle could not testify due to retrograde amnesia.

The physical evidence does not "clearly indicate" that Foresman's vehicle was in the wrong lane driving 70 miles per hour at the time of the crash. The evidence adduced was conflicting. Deputy Muratori's investigation indicated, from the position of the automobiles, that Hopper's vehicle may well have been in the wrong lane when the crash occurred. Rumley's testimony was directly contradicted by Foresman. Newlin's testimony was disputed by Foresman's depiction of the events immediately preceding the impact, and might have been neutralized in a juror's mind by Newlin's own inconsistent statements in other areas of his testimony. Defendant said his car might have been in the westbound or eastbound lane at the time of the impact. Although the majority indicates otherwise, defendant did not have to prove where his car was located.

In deciding whether to direct a verdict, the task is not merely to tot up the evidence on each side to see which side has more. This is nothing more than weighing the evidence. That is what the trial judge and my colleagues have done. Such is an improper standard for a directed verdict. The test, rather, is whether a contrary verdict could ever stand. Accordingly, I would reverse and remand.