James P. Moore, Administrator of Estate of John Gable, Deceased, Appellant, v. Karl Daydif, Appellee.

**Gen. No. 10,807.**

Second District.
November 14, 1955.
Released for publication December 1, 1955.

James P. Moore, and Wm. J. Crowley, both of Waukegan, for appellant.

Snyder, Clarke & Dalziel, of Waukegan, for appellee; Gerald C. Snyder, of Waukegan, of counsel.

MR. JUSTICE EOVALDI delivered the opinion of the court.

James P. Moore, as Administrator of the Estate of John Gable, deceased, commenced a suit in the Circuit Court of Lake County against Karl Daydif to recover damages caused by the injuries sustained to John Gable in an accident that occurred at Blanchard and Sheridan Roads in Waukegan, Illinois. A trial was had before a court and jury that brought in a verdict of not guilty. The plaintiff filed motions for a new trial and for judgment notwithstanding the verdict. Both of these motions were denied. Judgment was entered on the verdict and this appeal has been taken from that judgment.

The complaint charges that on the 5th day of October, 1952, the defendant was in possession and control of an automobile which he was then and there driving

in a southerly direction on Sheridan Road, a public highway in the County of Lake and State of Illinois; that plaintiff's intestate, John Gable, was a pedestrian crossing the said highway in a westerly direction on said road, and that he was in the exercise of due care and caution for his own safety, and for the safety of others at the time and place aforesaid. The complaint then alleges numerous acts of negligence and carelessness of Karl Daydif in the manner in which he drove his automobile, and that by reason of the aforesaid acts of negligence on the part of the defendant, his automobile struck the said John Gable and injured him, and from such injuries he died. The plaintiff asked for damages in the sum of $20,000.

██ The defendant filed his answer in which he denied all acts of negligence on his part, and denied that the plaintiff was in the exercise of ordinary care and caution for his own safety at the time he was injured. The appellant now contends that the defendant's attorney was guilty of improper conduct at the trial of the case, and that the Court committed reversible error in allowing the defendant to offer proof that plaintiff's intestate was intoxicated at and immediately prior to the accident, which caused his death, and that the Court erred in giving the instructions to the jury. We will first consider the instructions. Instruction No. 21 is as follows:

"21. If you believe from the evidence, under the instructions of the Court, that the automobile being driven by KARL DAYDIF was suddenly and without any negligence or fault on his part, placed in a position of danger, then in order to charge KARL DAYDIF with the duty to avoid the collision, the plaintiff must show by a preponderance of the evidence that the circumstances were such that KARL DAYDIF had time and opportunity to become conscious, by the exercise of ordinary care, of the facts giving rise to such duty and a reasonable opportunity to perform it.

"And if you further believe from the evidence under the instructions of the Court, that the circumstances as shown by the evidence did not charge KARL DAYDIF with the duty as thus defined, or if you believe from the evidence, under the instructions of the Court, that KARL DAYDIF did not have a reasonable opportunity to perform, by the exercise of that degree of care elsewhere required in these instructions, such duty as thus defined, then you should find KARL DAYDIF not guilty. (Given.)" This instruction is erroneous for several reasons. The first, that there is not sufficient evidence in the record on which to sustain the giving of this instruction. The evidence shows that John Gable had alighted from a bus and started to cross the highway with two other men; that the other two men got across safely; that Gable was standing in the center or north-bound lane of traffic on Sheridan Road; that defendant's car was following another car; that the first car turned off the road to the right and did not cause any damage, but defendant's car struck the deceased with its right front headlight. The evidence further shows that at one time John Gable was standing on the black line, or center of the pavement and took a step or two backward before he was struck. What is meant by the phrase "that the automobile being driven by Karl Daydif was suddenly and without any negligence or fault on his part, placed in a position of danger"? It is not the danger to the automobile, but the danger must be to the driver of the automobile. This instruction ends that under certain circumstances "they should find the defendant not guilty." This being a peremptory instruction, it should contain every element necessary to find the defendant not guilty. Defendant's Instruction No. 37 is also what is commonly called a sudden danger instruction, but in the instant case it is not applicable.

■ At the request of the defendant, the Court gave to the jury ten peremptory instructions, eight of them

under certain conditions directing them to find the defendant not guilty—two of them that the "plaintiff could not recover." This practice has been repeatedly condemned by all of our Appellate Courts. Stone v. Warehouse & Terminal Cartage Co., 6 Ill.App.2d 229 at page 236; Triolo v. Frisella, 3 Ill.App.2d 200. This Court in the case of Baker v. Thompson, 337 Ill. App. 327, stated as follows: "The issues presented in this case were simple and did not require the giving of nineteen instructions to inform the jury of the law applicable thereto. 'The practice of giving an excessive number of instructions has been repeatedly condemned. (Citing cases)' There could be only one purpose in having the trial court read to the jury seven different times a pronouncement that 'the plaintiff must be free of contributory negligence,' and that was to unduly prejudice the jury against the plaintiff. The jury could very easily have concluded that the trial judge was making another argument in behalf of the defendant. It is not unnatural for a jury to have great respect for the wisdom of the trial court. Likewise it is not unreasonable for them to adopt the views that the court apparently entertains. When the court tells them repeatedly that 'the plaintiff cannot recover' or that 'they must find the defendant not guilty,' the jury may believe that the court is of the opinion that the verdict should be for the defendant. No one coming into our courts for redress of wrongs done them should be required to bear the onus of this disadvantage." What we said in that case is applicable here. It was error to give so many peremptory instructions.

Contending that evidence as to intoxication of plaintiff's intestate is admissible only where defendant pleads this as an affirmative defense, appellant relies on the case of Blake v. Ewers, 341 Ill. App. 382 (Abstract), wherein this court pointed out the controversy which could have been avoided had this been done. That was an unusual case in that the jury, after finding

538

defendant not guilty, added: "That such result was due to the negligence of both the defendant and the plaintiff." The complaint was one for wanton and wilful misconduct. The court commented as follows: "This unusual verdict prompts the thought that the jury determined that the plaintiff's right to recovery was barred by his own negligence." The court further commented on the testimony of one John Matalon, whom appellant labeled a surprise witness, who testified as to the intoxication of plaintiff, stating as follows: "Plaintiff made a motion to strike this testimony on the ground that it had never been intimated, either in the pleadings or opening statement, that defendant was contending that plaintiff was intoxicated at the time of the accident. . . . Appellee's counsel contends that he stated in his opening statement at the trial that he was going to make proof of plaintiff's intoxication. Counsel for appellant asserts that this is not true, and he filed affidavits in support of his motion for new trial contradicting the same. On the trial, defendant's counsel did not question plaintiff in regard to his drinking just prior to the accident."

■ In said Blake v. Ewers case, several other affidavits—demonstrating newly discovered evidence —were filed by plaintiff-appellant supporting the amended motion for new trial. The Court, also, had occasion to criticize counsel because of the large number of instructions read to the jury on behalf of the defendant. As stated in White v. Seitz, 342 Ill. 266 at page 270: "A judicial opinion, however, like a judgment, must be read as applicable only to the facts involved and is an authority only for what is actually decided."

In the instant case, Glenn Earl Stites, 49 years of age, testified for defendant that he was married, had been living at one place with his family for ten years, and had been a bus driver for the Waukegan-North Chicago Transit since March, 1926. He testified as to the con-

dition of deceased. There was no objection to his testimony. He testified that he was driving a bus in the early evening in a southerly direction and Mr. Gable got on; he was normal. "When he got off the bus, he asked me when the last bus left for the north trip. I saw him again at 12:14 in the morning on October 5, 1952, at Washington and Genesee Street. He had difficulty getting up the steps; he was unsteady; he had difficulty in paying the fare, getting the fare ready. In my opinion, the man was intoxicated. When he got off he was slow and unsteady; he was drunk at that time." This witness was cross-examined at length by plaintiff's counsel as to the condition of deceased.

Appellant states in his brief: "If intoxication is to be suddenly interjected into the trial how can the plaintiff be prepared to meet it?" An examination of the record in this case convinces us that this matter was not suddenly brought into the case and that plaintiff-appellant was not completely unaware of such facts. The answer filed December 1, 1952, alleged that deceased "recklessly . . . darted back, forth and about upon said State Highway, in complete disregard for traffic . . . ." On March 22, 1953, plaintiff's counsel went to the home of the witness, Stites, and in his own handwriting took a statement in which Stites said that he observed the condition of the deceased at about 12:23 a. m., that deceased had difficulty in getting on the bus and was unsteady on his feet, and staggered. In July, 1953, previous notice having been given, the deposition of Gilbert Wedekind was taken and plaintiff's counsel asked this witness if he noticed the deceased "wobble" and the witness replied "he walked kind of funny like, like he might have been drunk."

██ The complaint in this case alleged that the plaintiff's intestate was in the exercise of due care and caution for his own safety and for the safety of others at the time and place aforesaid. The defendant in his answer denied this allegation. The burden was there-

540

fore upon the plaintiff to prove that his intestate was in the exercise of due care. Evidence refuting this material allegation of the plaintiff's complaint is competent and proper. We find no error in the admissibility of the evidence as to intoxication in this case.

A police officer was called to testify on behalf of the plaintiff, and the defendant's attorney in the presence of the jury, insisted that the report that was made by the police officers at the time they made their investigation of this accident, should be read in evidence. The trial court very properly sustained the objection to this offer (Paliokaitis v. Checker Taxi Co., 324 Ill. App. 21 at page 25–26; Enderle v. Lindsay, 351 Ill. App. 271; Branch v. Woulfe, 300 Ill. App. 472), but the attorney insisted that it should be admitted. The same error will probably not be committed at the next trial. For the reasons above stated, the judgment of the trial court is hereby reversed and the cause is remanded for a new trial.

Reversed and cause remanded.

DOVE, P. J., concurs.