Samuel Garbell, Plaintiff-Appellant, v. Leonard Fields, Defendant-Appellee.

Gen. No. 48,516.

First District, Second Division.

June 12, 1962.

R. C. Sommers and Leo K. Wykell, of Chicago (Leo K. Wykell, of counsel), for appellant.

Jacobs and McKenna, of Chicago (Norton Wasserman, of counsel), for appellee.

MR. JUSTICE BURKE delivered the opinion of the court:

Plaintiff appeals from a judgment against him following a verdict finding the defendant not guilty in a suit for damages for personal injuries brought under Sec 12(d), Ch 8, Ill Rev Stats 1961, which reads:

> "If a dog, without provocation, attacks or injures any person who is peaceably conducting himself in any place where he may lawfully be, the owner of the dog is liable in damages to the person so attacked or injured to the full amount of the injury sustained. . . ."

On Wednesday, September 17, 1958, plaintiff, 71 years of age, was returning to his home at 3751 West Leland Avenue, Chicago, at about 4:30 in the afternoon. When plaintiff was at the corner of Leland and Hamlin Avenues he saw two boys and a dog on the south sidewalk of Leland east of Hamlin Avenue. As he walked closer to where they were, in the direction of his apartment, the dog kept pulling in his direction. He kept edging away from the dog toward the edge of the walk adjoining the parkway. It may have rained as the sidewalk was a little wet. When he thought he had passed the dog he suddenly felt something "grab" his right calf and as it did he went down. His left hip struck the pavement and he was unable to rise. He knew it was the dog "grabbing" him. He saw the dog when he turned before he fell. The sidewalk at the place where he fell was clear and in good condition. He was assisted to his home by two neighbors. He was taken to a hospital and attended by physicians who diagnosed his injuries as a fracture of the neck of the left femur. Prior to the occurrence he was employed at a grocery store

filling orders. A disinterested witness, Mrs. Dorothy Siegal, testified that she was unable to tell whether there was contact between the dog and the plaintiff, that she saw two boys with the dog, heard the dog barking, saw that "as a man came along the dog sort of went for him," saw that the boys did not try to restrain the dog, saw plaintiff fall and then yelled at the boys to take the dog from him.

The defendant introduced substantial evidence from which the jury could determine that plaintiff's fall resulted from causes other than an attack or injury by the dog. There was testimony that the dog was a toy collie about 12 inches high at the shoulder and weighing about 5 pounds. Steven Rosenthal, a nephew of defendant's wife, took the dog out. The dog was on a steel link leash which was wrapped around Steven's hand once or twice. There was positive testimony that the dog did not bite the plaintiff and did not come in contact with him. Plaintiff admitted that he fell near a fence post. Steven testified that just before plaintiff fell he was trying to kick the dog and that at the time plaintiff was kicking out he was turned around. The dog could range less than four feet on the leash. Martin Speejacks, a companion of Steven, testified that after plaintiff passed behind him, plaintiff was looking at the witness, Steven and the dog and was walking the other way. Whether the dog attacked or injured the plaintiff was clearly a question of fact. In McEvoy v. Brown, 17 Ill App 2d 470, 150 NE2d 652, the court affirmed a judgment where the evidence "without question" showed that the dog ran between plaintiff's legs, thereby causing her to fall. In that case the court construed the statute to hold the owner of the dog liable for either attack or injury by the dog.

■ ■ Plaintiff urges that the trial court erred in giving the following instruction at defendant's request:

"The court further charges that if you find from a preponderance of the evidence that such damages as the plaintiff has sustained, if any, where the result of a fall or other cause not caused by a direct attack or injury on the part of the defendant's dog, then you are instructed that the plaintiff is not entitled to recover and you must find the defendant not guilty."

Plaintiff asserts that there is no evidence of any cause for his fall other than the attack or injury by the dog, and that the giving of the instruction was prejudicial. A careful reading of the transcript of testimony convinces us that there was substantial evidence that plaintiff's fall resulted from causes other than an attack or injury by the dog. The instruction is faulty in speaking of "direct" attack or injury by the dog. We do not feel that the addition of the word "direct" makes the instruction reversibly erroneous.

■ ■ The second proposition presented by plaintiff is that the court erred in instructing the jury at defendant's request that "you must not allow sympathy or prejudice to influence your verdict. Sympathy for the injuries of plaintiff, if any, should not influence you in determining whether or not the defendant is liable, or if liable, affect in any way the amount of your verdict. Your verdict should be entirely free from the effect of sympathy, compassion or prejudice, and without regard to who is the plaintiff and who is the defendant." Plaintiff points out that the instruction erroneously singles out the plaintiff on the question of sympathy. At the time plaintiff tendered his instruction he asked the court to give an instruction saying that the jury "must not allow sympathy or prejudice to influence" their verdict, but they "must be guided solely by the law and the evidence." Number 1.01 of IPI includes the cautionary instruction that "neither sympathy nor

prejudice should influence you." The instruction given told the jury that the verdict could not be influenced by sympathy or prejudice and that no regard should be paid to "who is the plaintiff and who is the defendant." We think that the cautionary instruction in IPI No 1.01 should be followed. The instruction given, however, could not harm the plaintiff.

 The third point advanced by the plaintiff is that defense counsel was guilty of misconduct in attempting to introduce a statement used by plaintiff to impeach a defense witness. Defendant's witness Speejacks testified, "I think he fell over the post." By way of impeachment plaintiff interrogated this witness about a statement taken in which he stated: "I am unable to say what he tripped over or on." The attorney for defendant moved to introduce "the statement already identified by this witness," and to make it a defendant's exhibit. The attorney for plaintiff objected, saying: "It is my exhibit and is competent only for those matters that are impeached." The attorney for defendant then said: "I make it my own exhibit." In answer to an inquiry by the trial judge the attorney for the defendant stated that he was not attempting to impeach anyone with the statement. The trial judge said: "The offer is overruled."

Plaintiff states that the action of defendant put plaintiff in the light of suppressing helpful evidence, citing Paliokaitis v. Checker Taxi Cab Co., 324 Ill App 21, 57 NE2d 216; Moore v. Daydif, 7 Ill App2d 534, 130 NE2d 119, and other cases. A reading of the entire colloquy between the lawyers convinces us that neither plaintiff nor his attorney was put in a position before the jury of attempting to suppress evidence. In Cafasso v. Pennsylvania R. Co., 169 F2d 451, the court said (453):

"It is true as a general rule that a prior consistent statement is not admissible to confirm a witness's testimony even though that testimony has been impeached by evidence of a prior inconsistent statement. Wigmore on Evidence, 3rd Ed Vol IV, § 1126. But the rule is subject to the exception 'that if some portions of a statement made by a witness are used on cross-examination to impeach him, other portions of the statement which are relevant to the subject matter about which he was cross-examined may be introduced in evidence to meet the force of the impeachment.' Affronti v. United States, 8 Cir, 1944, 145 F2d 3, 7. As is pointed out in the case just cited, the question of the admission of the consistent portion of such statement is addressed to the sound discretion of the trial judge which, however, is to be exercised with caution and only for the purpose of enabling the jury to make a correct appraisal of the credibility of the witness who has been impeached."

The defendant had the right to interrogate the witness as to other portions of the statement relevant to the subject matter to meet the force of the alleged impeachment. The trial judge should be consulted outside the presence of the jury to determine the propriety of the questions. The Paliokaitis case discloses a flagrant misuse of purported statements in the presence of the jury. On the record in the case at bar there was no such misconduct by counsel as to call for a reversal of the judgment.

█ Finally plaintiff argues that the court erred in giving an oral instruction in violation of Sec 67 of the Practice Act. The oral instruction told the jury that "if it should appear to you that the court has given a single instruction more than once, that is no indication to you and should not be taken as such that you are to give that particular instruction any

405

greater weight or consideration in your deliberations than if it had been given but once." Manifestly the oral instruction was not prejudicial.

For the reasons stated the judgment is affirmed.

Judgment affirmed.

FRIEND, P. J. and BRYANT, J., concur.