MADELINE J. ANDES, Indiv. and as Mother and Next Friend of James R. Andes *et al.*, Plaintiffs-Appellants, *v.* JEROME L. LAUER *et al.*, d/b/a Meyers' Motor Service, Defendants-Appellees.

Third District   No. 79-74

Opinion filed January 11, 1980.—Rehearing denied February 11, 1980.

Louis E. Olivero and Clifford E. Lund, both of Peru, for appellants.

Berry & O'Conor, of Ottawa, and Karaganis & Gail, Ltd., of Chicago (Andrew J. O'Conor, of counsel), for appellees.

Mr. JUSTICE SCOTT delivered the opinion of the court:

Madeline J. Andes and her three minor sons, James, Jody, and John, filed suit in the circuit court of Bureau County seeking to recover for damages sustained in a car-truck collision. Named as defendants were the truck driver, Jerome L. Lauer, and the truck owner, Harold F. Meyers. A Bureau County jury returned a verdict for both defendants, and the four

plaintiffs appealed to this court alleging that numerous errors occurred in the trial below.

On December 18, 1975, the plaintiffs resided on Echo Bluff Road in Bureau County, just a short distance south of the junction of Echo Bluff Road and Route 29. Mrs. Andes and sons John and James were scheduled for work at a restaurant in Bureau, Illinois, while Jody stayed with a babysitter. The four plaintiffs left their home in midafternoon—after the school day for John and James—with James driving the family auto. John and Jody were seated in the rear seat while Mrs. Andes was in the front seat with James.

The plaintiffs' auto proceeded north on Echo Bluff Road to the junction of Route 29 and then turned east. Jody's babysitter lived on the north side of Route 29 just a few hundred feet east of the junction. James Andes drove slowly for those few hundred feet as he intended to turn left into the driveway of the babysitter's home. As plaintiff's auto turned left into that drive, across the north lane of Route 29, the north lane being the lane designated for westbound traffic, a collision occurred between the eastbound truck driven by defendant Lauer and the Andes auto.

Some three years later the cause came to trial. At that time James Andes testified that he stopped according to the posted regulatory sign before turning right onto Route 29. He also testified that he looked to his left and saw no oncoming traffic, although it was impossible to see such oncoming traffic for any great distance because of a sharp curve on Route 29 just west of the junction with Echo Bluff Road. Finally, James testified that he put on his left turn blinker approximately 90 feet from the babysitter's driveway, looked in his rear mirror and saw no approaching cars or trucks.

Defendant Lauer explained that the collision was caused by his urgent response to an emergency situation caused by James Andes' carelessness. According to Lauer, his truck had passed through the sharp curve on Route 29 and was approaching the junction of Echo Bluff Road travelling 45 miles per hour when plaintiff's auto rolled through the stop sign on Echo Bluff Road. Because of the slow speed of the Andes' auto, and the proximity of the two vehicles, Lauer swerved into the north lane of Route 29, disregarding the demarcation of a no-passing zone. Defendant Lauer testified that this was his split-second response to what seemed an imminent rear-end collision with the Andes' auto. The rear-end collision did not occur, for at nearly the same moment that defendant turned his truck into the westbound lane of Route 29, James Andes began his left turn into the babysitter's driveway. The truck impacted with the side of the auto and pushed the auto nearly 120 feet before stopping.

■■ Among the instructions proposed by defendant's counsel and offered

by the trial court was an instruction on a driver's duty in emergency situations. It read:

> "A person may pass at an intersection justifiably by reason of necessity if the driver was without blame in occasioning or developing a situation and reasonably believes that such conduct was necessary to avoid a collision."

Plaintiffs objected to the instruction at trial and have preserved their objection for review by proposing an alternative instruction in conference and by citing the trial court's refusal to offer the alternative in a post-trial motion. The Illinois Pattern Jury Instructions recommend that no instruction be given which states that the law does not require a person to act with deliberation and care in the face of an unexpected danger not caused by his own negligence. (Illinois Pattern Instructions, Civil, No. 12.02 (2d ed. 1971).) Three reasons are given. First, it is argumentative. Second, it states a simple and obvious fact of human behavior. Third, except in the most obvious case when no juror need be reminded of the proposition, it will probably lead to reversible error. Two cases are cited which hold that reversible error results when such an instruction is given, *Moore v. Daydif* (1955), 7 Ill. App. 2d 534, 130 N.E.2d 119, and *Reese v. Buhle* (1957), 16 Ill. App. 2d 13, 147 N.E.2d 431. Justice Stouder, writing for the majority of this court, held that such instructions "should only be given under exceptional circumstances." (*Young v. Miller* (1967), 79 Ill. App. 2d 463, 468, 223 N.E.2d 854, 856.) We do not believe the facts of this case present those exceptional circumstances. It follows that the quoted instruction should not have been given and was in error.

■■■ As an additional allegation of error, the plaintiff cites the trial judge's failure to direct a verdict on the issue of contributory negligence in favor of plaintiff John Andes and his mother. We believe the treatise Illinois Tort Law and Practice correctly synthesizes the case law on this point:

> "At one time one or more of the Appellate Districts embraced rules which proved to be absurdities, in that they required substantially the same duty of the occupant as was required of the motorist in driving the automobile. * * * Since every approaching automobile constitutes a potential hazard in view of the possibility that it might swing across the center line, particularly in a line of oncoming cars where one might attempt to pass another, and considering that an automobile might be approaching from an intersecting road or from a driveway, to give true service to such a rule would require a constant harassment of the driver by the passenger seeking to comply with the law. Our Supreme Court laid the doctrine to rest in *Hatcher v. New York C.R. Co.* (1959) 17 Ill. 2d 587 * * * .

❋ ❋ ❋

In the absence of any evidence demonstrating that the passenger did anything other than what an ordinary person would have done at the time, it is the duty of the trial court to direct a verdict for the plaintiff upon this issue, and to eliminate it from jury consideration. Otherwise, the submission of such an issue to the jury is an inference by the trial court that there is a conflict or dispute as to this area which it is then the jury's province to resolve. This could be confusing and cause either the return of an improper verdict or impair an award of the full measure of damages in a liability case.

❋ ❋ ❋

Courts accept the realities of life, and recognize that the occupant of the vehicle has no practical control over its operation." (J. Mirza and J. Appleman, Illinois Tort Law & Practice §4.7 (1974).)

There is no evidence that either Madeline or John Andes saw an obvious impending danger which they ignored, and absent such conduct, as mere passengers, they had no affirmative duty to keep a lookout for potential hazards. *Dertz v. Pasquina* (1974), 59 Ill. 2d 68, 319 N.E.2d 12; *Myers v. Krajefska* (1956), 8 Ill. 2d 322, 134 N.E.2d 277.

Any negligence of James Andes is not imputable to his mother or brother by reason of joint enterprise theory. A joint enterprise can exist only in a business relationship (*Smith v. Bishop* (1965), 32 Ill. 2d 380, 205 N.E.2d 461), and the relation between two employees is not to be so labeled. As between co-employees, there is no sharing of profits, no shared proprietary interest and no right to direct the conduct of the other. As between co-employees in a car pool, there is no joint enterprise that will support the imputation of vicarious contributory negligence.

■■ ■ Madeline Andes was the owner of the plaintiff's auto and as such subject to a charge of contributory negligence on two theories independent of her status as a passenger. If a principal-agent relation existed between mother and son, then contributory negligence might be imputed. Agency will not be inferred from the parent and child relationship (*Ewing v. Davis* (1931), 261 Ill. App. 433; *Vukovich v. Sleboda* (1931), 261 Ill. App. 416), and there is no evidence to support any conclusion but that it was at James' own behest that he was driving to work on December 18, 1975. We find the record equally void of any evidence that Mrs. Andes knowingly entrusted the operation of her auto to an incompetent driver. *Dyreson v. Sharp* (1947), 333 Ill. App. 198, 76 N.E.2d 809.

In short, we find no basis for the trial court's refusal to direct a verdict for Madeline and John Andes on the issue of contributory negligence. A careful scrutiny of defendants' authority finds it in accord. The court's

refusal may well have resulted in confusion as to which issues it was the jury's province to resolve.

■■ ■ The final error alleged by the plaintiffs which we consider is the trial judge's refusal to admit into evidence the hospital records of the plaintiffs. Supreme Court Rule 236(b) indicates that the general rule with regard to the admission of business records does not apply to medical records. (Ill. Rev. Stat. 1977, ch. 110A, par. 236(b).) That medical records are excepted from the rule of admissibility established for other business records does not render medical records inadmissible.

> "While the wording of the Supreme Court Rule 236(b) may have caused some confusion in the minds of the courts as to the admissibility of medical records we are of the opinion that this rule allows the admission of hospital medical records where a proper foundation is laid. This is to be differentiated from the provisions of Rule 236(a) where it is provided that a business record kept in the regular course of business is admissible but that the circumstances of the making of the entry may be shown to affect its weight, not its admissibility." (*Casey v. Penn* (1977), 45 Ill. App. 3d 573, 583, 360 N.E.2d 93.)

In the case at bar, the trial court excluded the hospital records on the basis of the hearsay rule without permitting the plaintiffs an opportunity to establish a proper foundation. To do so was error under the rule established by the *Casey* decision.

No litigant is assured a perfect trial, if indeed such a trial were ever possible (*Tripp v. Bureau Service Co.* (1978), 62 Ill. App. 3d 998, 379 N.E.2d 324), but a litigant must not be denied a fair trial (*Neubauer v. Coca Cola Bottling Co.* (1968), 96 Ill. App. 2d 18, 238 N.E.2d 437). We believe the plaintiffs herein have been denied that fair trial. "It may well be that each of the incidents which we have set forth, standing alone, would not require a new trial; however, we make no determination on that matter but do conclude that their cumulative effect was so prejudicial as to make a fair trial impossible." (*Clarquist v. Kirschenman* (1977), 55 Ill. App. 3d 76, 81, 370 N.E.2d 840, 843.) The verdict and judgment of the circuit court is reversed and the cause remanded for a new trial.

Reversed and remanded.

STOUDER, P. J., and ALLOY, J., concur.