BRIAN J. FEDT *et al.*, Plaintiffs-Appellees, v. OAK LAWN LODGE, INC., d/b/a Holiday Inn, Defendant and Third-Party Plaintiff-Appellant (AAA Services, Inc., Third-Party Defendant-Appellee).

First District (2nd Division)   No. 84—664

Opinion filed April 23, 1985.

1062

Ruff, Weidenaar & Reidy, Ltd., of Chicago (John J. Reidy and Richard A. Jacobson, of counsel), for appellant.

Arnold & Kadjan, of Chicago (Daniel N. Kadjan and Gregory R. Sun, of counsel), for appellee Brian J. Fedt.

John G. Phillips, Ltd., Gerald M. Sachs & Associates, Ltd., and John Marszalek, all of Chicago, for appellee Ethel A. Clay.

James Kirk Perrin and Marsha Kay Ross, both of Haskell & Perrin, of Chicago, for appellee AAA Services, Inc.

JUSTICE HARTMAN delivered the opinion of the court:

Defendant Oak Lawn Lodge, Inc. (Oak Lawn Lodge) appeals from a jury verdict finding it liable under the Structural Work Act (Act) (Ill. Rev. Stat. 1983, ch. 48, pars. 60 through 69) for plaintiff Brian J. Fedt's injuries and plaintiff's decedent Marc D. Clay's death, resulting from a scaffold collapse on Oak Lawn Lodge's property. Oak Lawn Lodge sought third-party indemnification from plaintiffs' employer, AAA Services, Inc. (AAA), in which the jury found in favor of AAA. Oak Lawn Lodge appeals from the judgment entered on these verdicts, presenting as issues whether: (1) Oak Lawn Lodge's motions for a directed verdict and for judgment notwithstanding the verdict were erroneously denied; (2) the doctrine of comparative negligence applies to this case; (3) the third-party action was erroneously severed from the principal action at the conclusion of plaintiffs' case in chief; (4) certain rulings deprived Oak Lawn Lodge of a fair and impartial trial; and (5) the damages awarded were excessive.

On June 13, 1977, while Fedt, Clay and co-worker Jeffrey Carpenter were washing windows at the Oak Lawn Lodge, their scaffold collapsed and the men fell to the ground. Fedt and Carpenter were seriously injured and Clay was killed. Plaintiffs' separate actions against Oak Lawn Lodge were ultimately consolidated, and Oak Lawn Lodge's third-party action against AAA was consolidated with plaintiffs' actions for trial.

Before the jury began its deliberations, Carpenter and Oak Lawn Lodge settled his claim for $350,000. The jury returned verdicts against Oak Lawn Lodge and in favor of Clay for $1 million, and in favor of Fedt for $1,032,000. The jury answered yes to a special interrogatory which inquired, "Was the Oak Lawn Lodge *** guilty of major fault which was a proximate cause of plaintiffs' injuries and damages?" The jury found that Oak Lawn Lodge was not entitled to reimbursement from AAA.

After the court denied Oak Lawn Lodge's timely post-trial motions, this appeal followed.

I

■ Oak Lawn Lodge contends that the circuit court erred by denying its motions for a directed verdict and for judgment notwithstanding the verdict, arguing that under the "having charge of" and "wilful" language of section 9 of the Act (Ill. Rev. Stat. 1983, ch. 48, par. 69), the evidence failed to support the verdict. Plaintiffs correctly observe that Oak Lawn Lodge waived its objections to any alleged error by failing to specify in its post-trial motion the reasons why judg-

ment *n.o.v.* should be granted, citing section 2—1202(b) of the Code of Civil Procedure (Ill. Rev. Stat. 1983, ch. 110, par. 2—1202(b)). Such a motion must contain succinct statements of the factual basis for the requested relief; general conclusions are unacceptable. (*Wilson v. Clark* (1981), 84 Ill. 2d 186, 189-90, 417 N.E.2d 1322, *cert. denied* (1981), 454 U.S. 836, 70 L. Ed. 2d 117, 102 S. Ct. 140.) Oak Lawn Lodge's general allegations that "the verdict of the jury is against the law" and "against the manifest weight of the evidence" were insufficient to preserve its objections to these errors. Moreover, Oak Lawn Lodge's contention, that a wilful violation had not been established, in its memorandum in support of its post-trial motion, fails to preserve this issue. (*Graves v. North Shore Gas Co.* (1981), 98 Ill. App. 3d 964, 969, 424 N.E.2d 1279.) Assuming *arguendo* that it had not waived its objections, Oak Lawn Lodge's arguments must be rejected nevertheless.

■ The term "having charge of" is one of common usage and understanding, and is given its conventional meaning in the context of the Act. (*Larson v. Commonwealth Edison Co.* (1965), 33 Ill. 2d 316, 323, 211 N.E.2d 247; *Lyle v. Sester* (1981), 103 Ill. App. 3d 208, 217, 430 N.E.2d 699.) It is a generic term of broad import, and may include, but is not limited to, supervision and control. (*Larson v. Commonwealth Edison Co.* (1965), 33 Ill. 2d 316, 321.) Whether a defendant had "charge of" the work at issue is generally a question of fact (*McInerney v. Hasbrook Construction Co.* (1975), 62 Ill. 2d 93, 101, 338 N.E.2d 868), but where the evidence is insufficient to raise a fact question, the issue may be decided as a matter of law (*Norton v. Wilbur Waggoner Equipment Rental & Excavating Co.* (1979), 76 Ill. 2d 481, 486, 394 N.E.2d 403). Resolution of the question involves an assessment of the totality of the circumstances (*Norton v. Wilbur Waggoner Equipment Rental & Excavating Co.* (1979), 76 Ill. 2d 481, 490), under factors identified in *Chance v. City of Collinsville* (1983), 112 Ill. App. 3d 6, 11, 445 N.E.2d 39, and *Lyle v. Sester* (1981), 103 Ill. App. 3d 208, 218. Those factors, when considered in context with the instant case, demonstrate that sufficient evidence was presented here to raise a factual question for the jury's resolution.

Plaintiff Fedt testified that the window washers reported to Howard Sawyer, Oak Lawn Lodge's maintenance supervisor, who told them where they were to begin their work. He later also told them to clean the white columns of the building and change exterior light bulbs. He instructed them further not to tie their safety lines to anything on the roof, and later repeated his admonition, and he suggested that they elevate the scaffold outriggers by means of wood

beams which had been lying on the roof and were not provided by the window washers.

Sawyer testified that it was his duty to check and approve the window washers' work, insure that the property was not damaged and assure the safety of the hotel's patrons. He never discussed with his superiors his authority with regard to worker safety, but he "assumed" that, because he was in charge of building maintenance, he had authority to stop the work if it was unsafe. He never told the workers they could not tie their safety lines to the roof; however, this statement was contradicted by both Fedt's testimony and other evidence suggesting Sawyer had made earlier inconsistent statements.

Finally, the general manager of Oak Lawn Lodge, Joseph English, testified that Sawyer had to approve the window washers' work before they would be paid and to see that their work was done properly and to safeguard the premises. Sawyer had authority to engage extra work if he deemed it necessary and to add orally to the contract. English testified that Sawyer was not in charge of the washers' safety procedures and did not have the authority to stop them if their work was being performed in an unsafe manner; nevertheless, he conceded that his deposition testimony was to the contrary.

The foregoing evidence, when viewed in its aspect most favorable to plaintiffs, does not so overwhelmingly favor Oak Lawn Lodge that no contrary verdict based on the evidence could ever stand; therefore, the circuit court did not err by submitting to the jury the question of whether Oak Lawn Lodge was in "charge of" the work. See *Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 510, 229 N.E.2d 504; *McInerney v. Hasbrook Construction Co.* (1975), 62 Ill. 2d 93, 101-02.

Oak Lawn Lodge maintains that Sawyer's actions were no more than those of an owner assuring contract compliance. (See, *e.g., Melvin v. Thompson* (1963), 39 Ill. App. 2d 413, 188 N.E.2d 497; *Derrico v. Clark Equipment Co.* (1980), 91 Ill. App. 3d 4, 413 N.E.2d 1345.) To the contrary, by instructing the window washers not to tie off to the roof and to use the wood beams, combined with his authority to issue change orders and to stop unsafe work, the jury could have believed that Sawyer's position with respect to plaintiffs transcended that of an owner simply monitoring contract compliance. See *Ewert v. Wieboldt Stores, Inc.* (1980), 84 Ill. App. 3d 1008, 1016, 405 N.E.2d 1283.

■ As to whether Oak Lawn Lodge "wilfully" violated the Act, such a violation occurs when defendant knows that a dangerous condition exists or, by the exercise of reasonable caution, could have dis-

covered the condition. (*Simmons v. Union Electric Co.* (1984), 104 Ill. 2d 444, 453, 473 N.E.2d 946; *Ewert v. Wieboldt Stores, Inc.* (1984), 84 Ill. App. 3d 1008, 1015.) In the case at bar, the jury had the right to consider evidence showing that Sawyer instructed the window washers not to tie their safety lines to anything on the roof; and when he later saw that they had not complied, he reiterated his instruction, which the washers followed. Although Oak Lawn Lodge notes that Sawyer was ignorant of window washing practices and procedures, his instructions, if believed, nonetheless constitute wilful violations of the Act, in that Sawyer, had he exercised reasonable caution, would have realized the danger in which his instructions placed the window washers. Oak Lawn Lodge's wilful violation of the Act is further buttressed by the testimony of English, its general manager, that the roof had nothing permanent to which the workers could anchor their scaffolding, and that Sawyer had the duty to protect certain pipes on the roof by telling them not to tie off on them.

Sawyer's instruction to the window washers to use the wood beams also could have been deemed by the jury as a wilful violation of the Act. When he observed the beams on the roof shortly after the accident, Sawyer thought they had been placed, unsafely, too far back from the edge of the roof, but he had not so advised the window washers. In the exercise of reasonable caution, he would have so warned them. Based upon this evidence, the circuit court did not err by denying Oak Lawn Lodge's motions for a directed verdict and for judgment *n.o.v.*

## II

■ Oak Lawn Lodge's assertion, that the circuit court erred by refusing to permit the jury to consider plaintiffs' comparative fault, fails in light of *Simmons v. Union Electric Co.* (1984), 104 Ill. 2d 444, 456-61, which held that comparative negligence is inapplicable to actions brought under the Act.

## III

■ Oak Lawn Lodge next contends that the circuit court improperly severed the third-party action from the principal action after plaintiffs had presented their case in chief. A motion to sever (Ill. Rev. Stat. 1983, ch. 110, par. 2—1006) is addressed to the sound discretion of the trial court, and its decision will not be disturbed absent an abuse thereof. *Woodward v. Mettille* (1980), 81 Ill. App. 3d 168, 182, 400 N.E.2d 934; *Johnson v. Johnson* (1955), 5 Ill. App. 2d 453, 470, 125 N.E.2d 843.

After plaintiffs rested their cases, the circuit court granted their motions to sever the principal action from the third-party action. The parties were ordered to proceed with the principal action to its conclusion, and any testimony already developed by plaintiffs could be used by Oak Lawn Lodge in its third-party action. AAA's counsel was permitted to participate in the remainder of the principal action, but the court would closely control cross-examination of any witnesses. Oak Lawn Lodge then presented two witnesses in its defense of the principal action. AAA's attorney asked no questions of one witness, and only a few of the other. The court then reconsidered its earlier ruling, and ordered that trial of both actions would proceed at one time, with one set of arguments and instructions. The court noted that Oak Lawn Lodge had not been "irreparably damaged" by the severance, since one of the two witnesses had already been instructed to return for further examination, and the other would be made available.

Oak Lawn Lodge argues that it was prejudiced by the severance because it was unable to fulfill the promise of its opening statement to the effect that it would show that AAA, not Oak Lawn Lodge, was negligent; as severance was undisclosed to the jury, Oak Lawn Lodge's recalling of the two witnesses in order to show AAA's negligence may have appeared to the jury as "grabbing at straws." Oak Lawn Lodge also claims disruption of its trial strategy. These contentions must be rejected.

The jury was not informed of the severance; however, it was aware of plaintiffs' resting their cases, and was expressly advised by the court when Oak Lawn Lodge proceeded to its third-party action. Supreme Court Rule 233 provides that, "[i]n consolidated cases, third-party proceedings, and all other cases not otherwise provided for, the court shall designate the order" in which the parties proceed. (87 Ill. 2d R. 233.) The order of presentation of evidence rests within the trial court's discretion. Abuse of discretion is likely to arise only if a party is denied an opportunity to impeach witnesses, to support the credibility of impeached witnesses, or to respond to new points raised by the opponent. (E. Cleary & M. Graham, Handbook of Illinois Evidence sec. 611.1, at 371 (4th ed. 1984). See also *City of Sandwich v. Dolan* (1892), 141 Ill. 430, 441, 31 N.E. 416; *Ross v. Danter Associates, Inc.* (1968), 102 Ill. App. 2d 354, 367-68, 242 N.E.2d 330.) Oak Lawn Lodge does not allege that the severance prevented it from impeaching or rehabilitating witnesses' testimony or from responding to any of its opponents' points. Uninformed of the severance or reconsolidation, the jury witnessed the following order of presentation: plain-

tiffs' case; Oak Lawn Lodge's defense; plaintiff's rebuttal; Oak Lawn Lodge's third-party case; AAA's defense; Oak Lawn Lodge's rebuttal. Any error in the brief severance was harmless.

## IV

■ Oak Lawn Lodge urges that certain prejudicial errors deprived it of a fair trial. The first error involves the admission into evidence of a nine-year-old photograph of decedent Clay with two of his sisters. Plaintiffs respond that Oak Lawn Lodge waived its objection to this alleged error by failing to specify the photograph in its posttrial motion. The photograph, however, was cited in the motion's prayer for a new trial on damages.

A photograph is admissible if it has a reasonable tendency to prove a material fact in issue; it may be excluded if it is irrelevant or immaterial, or if its prejudicial nature clearly outweighs its probative value. (*Rusher v. Smith* (1979), 70 Ill. App. 3d 889, 894, 388 N.E.2d 906; *Lindsay v. Appleby* (1980), 91 Ill. App. 3d 705, 710, 414 N.E.2d 885.) In a wrongful death case, a decedent's photograph is admissible to show his state of well-being prior to his death. (*Ross v. Pfeifer* (1976), 39 Ill. App. 3d 789, 795, 350 N.E.2d 797.) Oak Lawn Lodge insists that the subject photograph was too remote in time to render it admissible for this purpose; the inclusion of the sisters in the picture, moreover, rendered it prejudicial. The jury heard testimony regarding decedent's family, including the names and ages of his sisters, and decedent's sister testified at trial. Admission of the picture, although perhaps improper, was not prejudicial and was therefore harmless.

■ Oak Lawn Lodge next urges that it was prejudiced by the admission into evidence of a "Bosworth splint," an item of medical hardware. Dr. Albert B. Bosch identified the Bosworth splint and said that it was identical to one depicted in an X ray of Fedt's pelvis, shown earlier to the jury. This witness also described the procedure, a vulgas osteotomy, in which the splint was used. Such evidence was properly admitted. *Smith v. Ohio Oil Co.* (1956), 10 Ill. App. 2d 67, 75-77, 134 N.E.2d 526.

■ Certain slides, allegedly shown to plaintiffs as part of their training by AAA, are claimed to have been received in evidence without proper foundation. AAA initially argues that the admission of the slides goes only to the conduct of AAA, an issue rendered moot by the jury's finding in the special interrogatory that Oak Lawn Lodge was guilty of major fault. AAA's contention is without merit. Where a judgment is challenged because of trial error, as here, the answer to a

special interrogatory is not controlling. (*Blakely v. Johnson* (1976), 37 Ill. App. 3d 112, 116, 345 N.E.2d 814.) Notwithstanding the foregoing, an adequate foundation for the slides was presented. Although Fedt and Carpenter denied being shown the slides presented in court, they conceded that they had, in fact, viewed slides as part of their AAA training. Robert Hubeny, AAA's president, testified that the slides shown to the jury, dealing with the rigging and handling of a swing-stage scaffold, were shown to the members of the high-rise division; plaintiffs and plaintiff's decedent were employed in the high-rise division. Thus, as some evidence was presented that plaintiffs had seen the slides, their admission was proper. Plaintiffs' denials that they had seen the particular slides presented in court went to the weight, not the admissibility, of this evidence.

■■ Oak Lawn Lodge identifies prejudice in certain closing remarks made by plaintiffs' attorneys. One was a comment by Fedt's counsel allegedly referring to liability insurance. To be prejudicial, however, such reference must indicate that defendant is insured. (*Twait v. Olson* (1982), 104 Ill. App. 3d 191, 196, 432 N.E.2d 1244.) The challenged remark here, viewed in context, refers to mortality tables which counsel apparently believed were developed by insurance companies, rather than by the United States Department of Health and Human Services, as shown by the evidence. The oblique remark made does not warrant reversal.

■■ Oak Lawn Lodge also contends that Clay's attorney invited the jury to stand in plaintiff's shoes by arguing that "when you're placing a value on Marc Clay's life during the deliberations, you are telling your own son how much you think of him," which is improper. (*Brant v. Wabash R.R. Co.* (1961), 31 Ill. App. 2d 337, 340, 176 N.E.2d 13.) Standing alone, such a remark is not sufficiently prejudicial to merit reversal. (See *Fortner v. McDermott* (1971), 1 Ill. App. 3d 358, 366-67, 272 N.E.2d 503.) The circuit court, in ruling on Oak Lawn Lodge's motion for a mistrial following closing arguments, found both this remark and the earlier reference to insurance improper; nevertheless, it correctly observed that they were not "of such great importance as to constitute prejudice." The court, in the best position to evaluate the prejudicial effect of improper remarks, did not abuse its discretion in so ruling. *Hooper v. Mizyad* (1981), 98 Ill. App. 3d 768, 774-75, 424 N.E.2d 851.

■■ Oak Lawn Lodge contends further that it was denied a fair trial by reason of plaintiffs' counsel's repeated objections during the third-party action to the effect that evidence presented was not admissible as to the principal action; such objection, it asserts, disrupted

the presentation of Oak Lawn Lodge's third-party case and may have led the jury to disregard the challenged evidence entirely. It is preferable to simply and concisely advise the jury to consider evidence for a limited purpose. (See *Sherman v. City of Springfield* (1966), 77 Ill. App. 2d 195, 217, 222 N.E.2d 62.) The court, in having sustained plaintiffs' objections, followed by its admonition that such evidence was to be considered by the jury only for purposes of the third-party action, did not prejudice Oak Lawn Lodge so that it did not get a fair trial.

■■ Oak Lawn Lodge also maintains that counsel for Carpenter prejudicially assured the jury in his opening statement that he would produce evidence he had no intention of producing, specifically, that scaffolds had been used on the subject building enough times in the past to put Oak Lawn Lodge on notice of its lack of an anchoring device on the roof. Oak Lawn Lodge argues that no evidence was subsequently presented to indicate that the accident occurred because the building lacked anchoring devices or that the prior use of scaffolds without anchoring devices was so dangerous as to put Oak Lawn Lodge on notice that such devices were necessary. To the contrary, the evidence here did show that scaffolds had been used on the building many times previously, and that building management knew that anchoring devices were lacking. Whether Oak Lawn Lodge was also on notice of the danger inherent in the lack of such devices was not presented, but plaintiffs insist that this would have been shown through their expert witness, consulting engineer and architect, Dr. Louis Jacobs, whose testimony was barred upon Oak Lawn Lodge's objection having been sustained. The *voir dire* examination of this witness reveals that he would have testified that, in his opinion, the accident occurred because the window washers were not provided with a safe, suitable, and proper scaffold, in that they were not permitted to tie in their safety lines and put on safety belts, or to tie back the outriggers to a permanent part of the structure, as required by industry standards. Oak Lawn Lodge did not object to Dr. Jacobs' testimony until just before he was to testify. As counsel's opening remarks appear to have been made in good faith, with reasonable ground to believe that the evidence was admissible, the remarks were not improper. *Gillson v. Gulf, Mobile & Ohio R.R. Co.* (1969), 42 Ill. 2d 193, 196-97, 246 N.E.2d 269; *Schwedler v. Galvan* (1977), 46 Ill. App. 3d 630, 640, 360 N.E.2d 1324.

■■ Oak Lawn Lodge lastly argues that the cumulative effect of the foregoing trial errors deprived it of a fair trial, even though individually they may not have been prejudicial enough to require rever-

sal. (See *Clarquist v. Kirschenman* (1977), 55 Ill. App. 3d 76, 81, 370 N.E.2d 840; *Andes v. Lauer* (1980), 80 Ill. App. 3d 411, 416, 399 N.E.2d 990.) These errors, occurring during the course of a two-week trial, were not so numerous or flagrant as to have substantially prejudiced Oak Lawn Lodge. No litigant is assured a perfect trial, but only a fair one. See *Andes v. Lauer* (1980), 80 Ill. App. 3d 411, 399 N.E.2d 990.

## V

■■■ Oak Lawn Lodge's final assignment of error is that the damages verdicts were excessive, and that, accordingly, the circuit court erred by denying its motion for a new trial as to damages or for remittitur.

As to plaintiff Fedt, the evidence fully supported the jury award of $1,032,000 in damages as follows: $400,000 for disability and disfigurement; $262,800 for past pain and suffering; $279,000 for future pain and suffering; $29,000 for past medical care; $13,200 for future medical care; and $48,000 for lost earnings. There was considerable evidence adduced regarding: the limitations of Fedt's physical activities resulting from his injuries; the series of operations performed on his arm, nose and hip; the dentistry and oral surgery required; his lengthy convalescence; and the necessity of a future total hip replacement to alleviate the degenerative arthritis caused by the injury. The award for pain and suffering is left to the jury's conscience and judgment (*Caley v. Manicke* (1962), 24 Ill. 2d 390, 392, 182 N.E.2d 206) and was not so clearly excessive as to require reversal (see *Parson v. City of Chicago* (1983), 117 Ill. App. 3d 383, 453 N.E.2d 770).

■■ The jury's award of $1 million for the death of Marc Clay must also be sustained. There is no fixed monetary standard for evaluating a human life, and the award of damages greatly depends on the sound judgment of the jury. (See *Tonarelli v. Gibbons* (1984), 121 Ill. App. 3d 1042, 1050, 460 N.E.2d 464.) Here, the jury was able to consider the testimony of Clay's mother, father, and sister as to decedent's work habits, employment history, education, and ambitions, and his relationship with and contributions to his family. The verdict had ample support in the record and was not the result of passion or prejudice.

■■■ Oak Lawn Lodge contends that, because the verdicts exceeded the amounts requested in final argument by plaintiffs' counsel, they were clearly excessive. A jury's award of a verdict higher than that requested by counsel does not, by itself, indicate that the jury acted out of passion or prejudice. (*E.g., Bail v. Cunningham Broth-*

*ers, Inc.* (7th Cir. 1971), 452 F.2d 182, 187. See also *Pearson v. Ford Motor Co.* (1975), 32 Ill. App. 3d 188, 336 N.E.2d 528.) Here, counsel for both plaintiffs emphasized in argument that the amounts mentioned were only suggestions, and invited the jury to award more. Fedt's counsel said the figure suggested, $632,000, was "reasonable," but added that "I'm not saying to you here that that is what you should pay." Counsel for Clay suggested $600,000 to compensate for the family's loss, noting that "[i]f you feel that I've underestimated the loss *** then you tell me so with your verdict." The circuit court did not err by permitting the verdicts to stand.

For the foregoing reasons, there are no bases upon which to disturb the jury's verdicts or the circuit court's judgment, and they must be affirmed.

Affirmed.

STAMOS, P.J., and PERLIN, J., concur.