NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2021 IL App (4th) 190820-U

NO. 4-19-0820

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
July 14, 2021
Carla Bender
4ᵗʰ District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Champaign County |
| SHERMAN K. BRAGG, | ) | No. 13CF1073 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Thomas J. Difanis, |
| | ) | Judge Presiding. |

JUSTICE TURNER delivered the judgment of the court.
Justices Cavanagh and Holder White concurred in the judgment.

**ORDER**

¶ 1     *Held*:  The circuit court did not err by dismissing defendant's postconviction
petition at the second stage of the postconviction proceedings.

¶ 2     In May 2019, defendant, Sherman K. Bragg, filed a petition under the

Post-Conviction Hearing Act (Postconviction Act) (725 ILCS 5/122-1 *et seq.* (West 2018)).  The

Champaign County circuit court advanced defendant's petition to the second stage of the

proceedings and appointed defendant counsel.  Postconviction counsel filed an amended petition

asserting (1) ineffective assistance of appellate counsel, (2) ineffective assistance of trial counsel,

(3) a due process violation, and (4) a violation of his right to a public trial.  The State filed a

motion to dismiss defendant's amended postconviction petition.  In a November 2019 written

order, the court granted the State's motion to dismiss.

¶ 3     Defendant appeals, asserting his due process rights were violated when the trial

court struck the testimony about a hearsay statement made by his codefendant regarding the weapon used in the robbery. We affirm.

¶ 4                                    I. BACKGROUND

¶ 5        In July 2013, defendant was charged with armed robbery with a firearm on an accountability theory, which is a Class X felony with an additional mandatory 15-year sentence enhancement (720 ILCS 5/18-2(a)(2) (West 2012)). In September 2013, the State added a charge of armed robbery without a firearm (720 ILCS 5/18-2(a)(1) (West 2012)). Both charges related to the July 3, 2013, robbery of a Sonic Drive-In in Savoy, Illinois. One male, later identified as Devin McClendon, pushed his way into the closed business while in possession of a weapon and took cash. Defendant's girlfriend, Natasha Duvall, was working at the Sonic Drive-In as the night manager at the time of the robbery. Defendant, McClendon, and Duvall had together planned the robbery. In July 2014, a jury found defendant guilty of armed robbery with a firearm.

¶ 6        At defendant's July 2014 trial, the State presented the testimony of (1) Brian Barto, the general manager of the Sonic Drive-In; (2) Robert Davis, a Sonic Drive-In employee; (3) Dustin Bronson, a high school acquaintance of defendant; (4) Chelsey Keyes, a Champaign County sheriff's deputy; (5) Jonathan Rieches, a Champaign County sheriff's deputy; (6) Adrienne Powell, a Verizon Wireless employee; (7) Duvall; (8) Andrew Good, a Champaign County sheriff's detective; and (9) Nicole Bolt, a Champaign County sheriff's detective. The evidence relevant to the weapon used in the robbery follows.

¶ 7        Barto testified, as Davis was opening the door of the Sonic Drive-In, a man pushed the door open, spun Davis around, and put a handgun to the back of Davis's head. Barto testified he had a clear side view of the gun when the man and Davis turned in front of him. The

- 2 -

man later put the gun to the back of Barto's head and neck area. The gun felt hard and heavy. Based on his experience with guns, Barto believed the man was holding a gun. Barto described the gun as a black, shiny, metallic, semiautomatic pistol. Barto also testified he was aware replica guns and BB guns may have the same weight and feel as a regular gun.

¶ 8 Davis testified the man was covering what appeared to be a gun with a bandanna when the man entered the store. Davis felt cold, hard metal being applied to the back of his neck. The man removed the gun from his neck. Davis later observed the man place the gun against Barto's head. Nothing was covering the gun at that time. Davis described the gun as shiny. Davis had experience with firearms and owned a 9-millimeter handgun. His handgun had all the same characteristics as the gun that was shoved up against his head. Davis believed it was a real gun based on the sheen and physical touch of the gun. Davis did have some BB guns. They were plastic and had an orange plastic piece on the end. The gun used during the robbery did not have an orange tip.

¶ 9 Bronson testified, on July 2, 2013, defendant asked Bronson if he had any firearms. Defendant said he wanted the firearm because "he was going to rob a place." Bronson did not find a firearm for defendant.

¶ 10 During defense counsel's cross-examination of Detective Good, the following exchange took place:

"Q. I said did you have information that a BB gun may have been used instead of a handgun?

A. No. We had one—

Q. You didn't have any information?

A. We had one defendant who claimed it was a BB gun, but we had—

Q. So that was—so that would be information; correct?

A. Well, information, whether you want to consider it reliable, I guess.

Q. Well, it is true that, in fact, that the—from the moment that the person came into the Sonic, the, the BB gun was actually covered with a bandanna, correct?

A. At one point, it—the bandanna, you can see the bandanna fall off the, the gun.

Q. Right. But initially, coming in, he had the bandanna covering the gun, right?

A. That's correct.

Q. And, in fact, I believe that you—when you said that you got information, you're saying that from the statement of, of [McClendon] that he— that he had a BB gun, correct?

MS. WEBER [(ASSISTANT STATE'S ATTORNEY)]: Objection, Your Honor.

THE COURT: Sustained.

MR. WIMBERLY [(DEFENSE COUNSEL)]:· So you had information that at the time that it may not have been a handgun whether or not you believed it or not, correct?

[DETECTIVE GOOD]: [McClendon] claimed that he did not have an actual firearm.

Q. Okay. And that it was a BB gun?

A. Yes.

- 4 -

Q. And, in fact, you had information that, in fact, he was trying to cover the gun because there was something written on the gun that would—that would express that it was not a real gun?

MS WEBER: Objection, Your Honor.

THE COURT: I'm going to sustain the objection. It's hearsay."

Detective Good further testified he was aware of look-alike and replica guns that have the feel and weight of an actual gun. In his experience, BB guns have attributes such an orange tip that make them easily identifiable as BB guns. Most BB guns are made of plastic. Detective Good also testified the police never found the gun.

¶ 11    After Detective Good's testimony and a recess, the State requested the trial court instruct the jury to disregard Detective Good's testimony regarding McClendon's hearsay statements. The court granted the request and told defense counsel, "[t]he fact that the officer indicated they had information that may have been other than a firearm, that's fair game for closing argument." The court told the jury the following:

"Ladies and gentlemen, during the testimony of [Detective] Good, there was a question asked about something that Devin McClendon said about the nature of the weapon in question. That's inadmissible hearsay and you are instructed to disregard the statements concerning what Mr. McClendon might have said."

¶ 12    During defense counsel's closing argument, the trial court allowed defendant to argue the State did not establish the weapon used during the robbery was a firearm. Defense counsel pointed out witnesses testified BB guns can look like real firearms. However, the trial court sustained the State's objection when defense counsel stated, "You have testimony that's in

evidence that the object that was used in this robbery was not a firearm. It was a BB gun."

¶ 13     During jury deliberations, the jury asked whether they could "consider a BB/pellet gun a firearm?" The court defined a "firearm" by noting the term excluded, *inter alia*, a "BB gun which expels a single globular projectile not exceeding 18 inch in diameter but which has a maximum muzzle velocity of less than 700 feet per second." The jury found defendant guilty of armed robbery with a firearm. On September 4, 2014, the trial court sentenced defendant to 23 years in prison. Defendant appealed.

¶ 14     On appeal, he asserted the trial court erred in sustaining the State's objection during defendant's closing argument to a statement a BB gun was used in the robbery and made arguments regarding assessments imposed on him and his right to pretrial custody credit. We affirmed defendant's conviction and sentence but remanded the cause for the trial court to apply defendant's pretrial custody credit. *People v. Bragg*, 2017 IL App (4th) 140800-U. Defendant filed a petition for leave to appeal to the supreme court, which was denied. *People v. Bragg*, No. 122311 (Ill. Jan. 31, 2019) (supervisory order).

¶ 15     In May 2019, defendant filed *pro se* his postconviction petition identifying nine claims. Defendant filed a supporting memorandum addressing each claim. Attached to his memorandum was defendant's affidavit and an affidavit by McHenry Edwards. The circuit court moved defendant's petition to the second stage of the proceedings and appointed defendant counsel.

¶ 16     Postconviction counsel filed an amended petition asserting the following claims: (1) defendant was denied the right to a fair trial by the trial court allowing the State to present improper hearsay evidence at trial, (2) trial counsel was ineffective by not offering the correct and complete objections at trial which allowed introduction of improper and inadmissible

evidence, (3) trial counsel was ineffective for failing to object the State's continuing leading questions posed to State's witnesses, (4) trial counsel was ineffective for waiving defendant's preliminary hearing without his consent, (5) trial counsel was ineffective for admitting defendant's guilt during closing arguments without the defendant's consent, (6) trial counsel was ineffective for withdrawing defendant's motion to suppress without defendant's consent, (7) defendant was denied his right to a fair trial in violation of his due process rights when the trial court granted the State's request to strike the testimony of Detective Good regarding McClendon's statement the gun used in the robbery was not an actual firearm, (8) defendant was denied his right to a public trial, and (9) appellate counsel was ineffective for failing to raise the aforementioned issues on appeal. Regarding issue seven, the petition also asserted the trial court improperly struck evidence that had been properly admitted. No supporting exhibits addressing issue seven were attached to the petition. Additionally, we note defense counsel filed a certificate under Illinois Supreme Court Rule 651(c) (eff. July 1, 2017).

¶ 17 In September 2019, the State filed a motion to dismiss defendant's amended postconviction petition. Defendant filed a reply brief responding to the State's motion to dismiss. On November 8, 2019, the circuit court entered a written order granting the State's motion to dismiss. The court noted most of defendant's petition could have been raised on direct appeal. It further found that, since defendant was found guilty beyond a reasonable doubt, the outcome of a preliminary hearing with a lesser burden would have been a finding of probable cause. The court also noted defendant's right to a public trial claim was not well-taken. Due to the small size of the courtroom and location of the jury box, spectators were allowed entry when a witness is excused and before another witness is called.

¶ 18 On November 18, 2019, defendant filed a timely notice of appeal from the circuit

court's November 8, 2019, judgment in sufficient compliance with Illinois Supreme Court Rule 606 (eff. July 1, 2017). Accordingly, this court has jurisdiction of defendant's appeal from the dismissal of his amended postconviction petition under Illinois Supreme Court Rule 651(a) (eff. July 1, 2017).

¶ 19                                    II. ANALYSIS

¶ 20          The Postconviction Act provides a remedy for defendants who have suffered a substantial violation of constitutional rights at trial. *People v. Pendleton*, 223 Ill. 2d 458, 471, 861 N.E.2d 999, 1007 (2006). In cases not involving the death penalty, the Postconviction Act sets forth three stages of proceedings. *Pendleton*, 223 Ill. 2d at 471-72, 861 N.E.2d at 1007.

¶ 21          At the first stage, the circuit court independently reviews the defendant's postconviction petition and determines whether "the petition is frivolous or is patently without merit." 725 ILCS 5/122-2.1(a)(2) (West 2018). If it finds the petition is frivolous or patently without merit, the court must dismiss the petition. 725 ILCS 5/122-2.1(a)(2) (West 2018). If the court does not dismiss the petition, it proceeds to the second stage, where, if necessary, the court appoints the defendant counsel. *Pendleton*, 223 Ill. 2d at 472, 861 N.E.2d at 1007. Defense counsel may amend the defendant's petition to ensure his or her contentions are adequately presented. *Pendleton*, 223 Ill. 2d at 472, 861 N.E.2d at 1007. Also, at the second stage, the State may file a motion to dismiss the defendant's petition or an answer to it. *Pendleton*, 223 Ill. 2d at 472, 861 N.E.2d at 1008. If the State does not file a motion to dismiss or the court denies such a motion, the petition advances to the third stage, wherein the court holds a hearing at which the defendant may present evidence in support of his or her petition. *Pendleton*, 223 Ill. 2d at 472-73, 861 N.E.2d at 1008. In this case, the State did file a motion to dismiss, and the court granted that motion.

- 8 -

¶ 22　　　　With the second stage of the postconviction proceedings, the circuit court is concerned only with determining whether the petition's allegations sufficiently show a constitutional infirmity that would necessitate relief under the Postconviction Act. *People v. Coleman*, 183 Ill. 2d 366, 380, 701 N.E.2d 1063, 1071 (1998). At this stage, "the defendant bears the burden of making a substantial showing of a constitutional violation," and "all well-pleaded facts that are not positively rebutted by the trial record are to be taken as true." *Pendleton*, 223 Ill. 2d at 473, 861 N.E.2d at 1008. "[T]he 'substantial showing' of a constitutional violation that must be made at the second stage [citation] is a measure of the legal sufficiency of the petition's well-pled allegations of a constitutional violation, *which if proven* at an evidentiary hearing, would entitle petitioner to relief." (Emphasis in original.) *People v. Domagala*, 2013 IL 113688, ¶ 35, 987 N.E.2d 767. The court reviews the petition's factual sufficiency as well as its legal sufficiency considering the trial court record and applicable law. *People v. Alberts*, 383 Ill. App. 3d 374, 377, 890 N.E.2d 1208, 1212 (2008). However, at a dismissal hearing, the court is prohibited from engaging in any fact-finding. *Coleman*, 183 Ill. 2d at 380-81, 701 N.E.2d at 1071. Thus, the dismissal of a postconviction petition at the second stage is warranted only when the allegations in the petition, liberally construed in light of the trial record, fail to make a substantial showing of a constitutional violation. *Coleman*, 183 Ill. 2d at 382, 701 N.E.2d at 1072. We review *de novo* the circuit court's dismissal of a postconviction petition at the second stage. *Pendleton*, 223 Ill. 2d at 473, 861 N.E.2d at 1008.

¶ 23　　　　Defendant asserts his right to due process was violated and he was denied a fair trial when the circuit court struck Detective Good's testimony about McClendon's statement. He notes he had a right to present a meaningful criminal defense. The State asserts defendant's claim could have been raised on direct appeal and, thus, defendant has forfeited the issue. See

*People v. Rogers*, 197 Ill. 2d 216, 221, 756 N.E.2d 831, 833 (2001) (noting any issues which could have been raised on direct appeal are forfeited during postconviction proceedings). Defendant asserts appellate counsel was ineffective for failing to raise the issue on direct appeal.

¶ 24　　　　Claims of ineffective assistance of appellate counsel are evaluated under the two-pronged test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). *People v. Enis*, 194 Ill. 2d 361, 377, 743 N.E.2d 1, 11 (2000). For a successful ineffective assistance of counsel claim, a defendant must demonstrate (1) defense counsel's performance fell below an objective standard of reasonableness *and* (2) the deficient performance prejudiced the defendant. *Strickland*, 466 U.S. at 687. To satisfy the deficiency prong of *Strickland*, the defendant must demonstrate counsel made errors so serious and counsel's performance was so deficient that counsel was not functioning as "counsel" guaranteed by the sixth amendment (U.S. Const., amend. VI). *People v. Evans*, 186 Ill. 2d 83, 93, 708 N.E.2d 1158, 1163 (1999). Further, the defendant must overcome the strong presumption the challenged action or inaction could have been the product of sound trial strategy. *Evans*, 186 Ill. 2d at 93, 708 N.E.2d at 1163. To satisfy the prejudice prong, the defendant must prove a reasonable probability exists that, but for counsel's unprofessional errors, the proceeding's result would have been different. *Evans*, 186 Ill. 2d at 93, 708 N.E.2d at 1163-64. Additionally, the *Strickland* Court noted that, when a case is more easily decided on the ground of lack of sufficient prejudice rather than that counsel's representation was constitutionally deficient, the court should do so. *Strickland*, 466 U.S. at 697.

¶ 25　　　　Generally, state lawmakers have broad latitude under the Constitution to make rules excluding certain evidence from criminal trials. *Holmes v. South Carolina*, 547 U.S. 319, 324 (2006). However, the United States Supreme Court has recognized that latitude has limits. *Holmes*, 547 U.S. at 324. It noted the United States Constitution guarantees criminal defendants

"a meaningful opportunity to present a complete defense." (Internal quotation marks omitted.) *Holmes*, 547 U.S. at 324. The aforementioned right is violated when an evidentiary rule (1) infringes on a weighty interest of the criminal defendant and (2) is arbitrary or disproportionate to the purpose it was designed to serve. *Holmes*, 547 U.S. at 324-25. The Supreme Court recognized the Constitution permits judges to exclude evidence which is (1) repetitive, (2) only marginally relevant, or (3) poses an undue risk of (a) harassment, (b) prejudice, or (c) confusion of the issues. *Holmes*, 547 U.S. at 326-27.

¶ 26       In this case, the trial court sustained the objection to the testimony based on the hearsay rule. Our supreme court has explained the basis for the hearsay rule as follows:

> "The fundamental purpose of the hearsay rule was and is to test the real value of testimony by exposing the source of the assertion to cross-examination by the party against whom it is offered. While the administration of an oath and the right of confrontation are also spoken of as necessary elements, the essential feature, without which testimonial offerings must be rejected, is the opportunity for cross-examination of the party whose assertions are offered to prove the truth of the act asserted." *People v. Carpenter*, 28 Ill. 2d 116, 121, 190 N.E.2d 738, 741 (1963).

¶ 27       In *People v. McCullough*, 2015 IL App (2d) 121364, ¶ 114, 38 N.E.3d 1, the reviewing court found the exclusion of reports made by the Federal Bureau of Investigation (FBI) which contained multiple layers of hearsay did not violate the defendant's right to present a defense because (1) the rule of evidence prohibiting the reports admission was not arbitrary and, (2) even if the FBI reports had been admitted, they did not tend to exonerate the defendant. The court explained "[t]he rule against hearsay is grounded in the necessity of cross-

examination, and it is a basic rather than a technical rule." *McCullough*, 2015 IL App (2d) 121364, ¶ 114 (citing *Grand Liquor Co. v. Department of Revenue*, 67 Ill. 2d 195, 199, 367 N.E.2d 1238, 1240 (1977)). Moreover, allowing "rank hearsay or multiple hearsay" without any means of testing its veracity through cross-examination would lead to the unfair prejudice, the possible confusion of the issues, and the potential to mislead, all of which the *Holmes* Court identified as legitimate reasons to exclude evidence. *McCullough*, 2015 IL App (2d) 121364, ¶ 114. There, the heart of the issue was the defendant's desire to present an alibi defense without allowing the State the opportunity for cross-examination and to impeach the alibi with the defendant's later statements. *McCullough*, 2015 IL App (2d) 121364, ¶ 114.

¶ 28    Defendant admits McClendon's statement was hearsay and does not contend a hearsay exception applied. He also does not address *McCullough* but, instead, cites federal cases. The federal case that addressed the right to a meaningful defense and exclusion of the evidence based on the hearsay rule was *Kubsch v. Neal*, 838 F.3d 845 (7th Cir. 2016). In *Kubsch*, 838 F.3d at 862, the Seventh Circuit Court of Appeals found the exclusion of evidence violated the defendant's due process rights. There, the defendant was sentenced to death for a triple murder, but the jury never saw a videotaped statement by a young witness, which if believed would have shown the defendant could not have committed the crimes. In reaching its decision, the Seventh Circuit explained the hearsay rule was based on the belief untrustworthy evidence should not be presented to the trier of fact. *Kubsch*, 838 F.3d at 855. Generally, out-of-court statements typically lack accepted indicia of reliability, such as the witness being (1) under oath, (2) available for cross-examination, and (3) present so the jury can assess demeanor and credibility. *Kubsch*, 838 F.3d at 855. Exceptions to the hearsay rule exist when reliability concerns are not present. *Kubsch*, 838 F.3d at 855. The Seventh Circuit noted the

following four dangers had traditionally been thought to arise from hearsay evidence: (1) defects in the declarant's perception, (2) defects in the declarant's memory, (3) a defective narration on the part of either the declarant or the witness, and (4) a lack of sincerity or veracity on the declarant's part. *Kubsch*, 838 F.3d at 860. In that case, none of the dangers were present to any significant degree in the videotape. *Kubsch*, 838 F.3d at 860. Additionally, the Seventh Circuit noted Supreme Court cases had provided that, when hearsay is otherwise reliable, it is critical to the theory of the defense, and the case involves a murder prosecution, due process requires its admission. *Kubsch*, 838 F.3d at 862.

¶ 29          Here, we have very little information on when and under what circumstances McClendon made his statement about the BB gun. We only know Detective Good was aware McClendon, who was the individual who physically committed the robbery, claimed he had a BB gun and not an actual firearm. Clearly, it was in McClendon's interest to claim the weapon was a BB gun and not a firearm. The veracity of the declarant on this matter is questionable. Contrary to defendant's assertion, the cases he cites do not stand for the proposition a codefendant's self-serving hearsay statement rises to the level of reliability necessary for its admission into evidence. See *People v. Blan*, 392 Ill. App. 3d 453, 459, 913 N.E.2d 23, 28 (2009) (finding the defendant's self-serving testimony constituted " 'very slight' " evidence supporting the defendant's right to a lesser-included offense jury instruction); *Wilson v. Don LaCost, Inc.*, 20 Ill. App. 3d 624, 627, 314 N.E.2d 27, 30 (1974) (explaining it was for the jury to decide what version of the events to believe even when one side's evidence was self-serving but not inherently improbable on the facts presented). Additionally, McClendon's statement is significantly less reliable than the videotaped interview of the young girl in *Kubsch*. Like the defendant in *McCullough*, defendant wants to present a defense without the State having the

ability to cross-examine the witness. Accordingly, we find defendant has not made a substantial showing McClendon's hearsay statement was sufficiently reliable for admission. Thus, he did not show the application of the hearsay rule was arbitrary.

¶ 30    Moreover, defendant simply claims the hearsay statement was the only evidence available to show the weapon was a BB gun. However, defendant provides no reason for why he did not call McClendon to testify at his trial. As such, defendant also has not made a substantial showing the excluded hearsay evidence was critical to his defense.

¶ 31    Since defendant has not shown his claim would have been successful on appeal, defendant failed to make a substantial showing he was prejudiced by appellate counsel's failure to raise the due process claim on appeal. In this case, the circuit court did not err by dismissing defendant's claim at the second stage of the proceedings.

¶ 32                                  III. CONCLUSION

¶ 33    For the reasons stated, we affirm the Champaign County circuit court's judgment.

¶ 34    Affirmed.